**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------- X

BAYTREE CAPITAL ASSOCIATES, LLC, derivatively on   :
behalf of BROADCASTER, INC.,

                        :

                 Plaintiff,

                        :

           -against-

                        :

NOLAN QUAN, MARTIN R. WADE III, BLAIR MILLS,
RICHARD BERMAN, ANDREW GARRONI, JASON        :    Case No.: 08-cv-1602
BRAZELL, ROBERT GOULD, SANGER ROBINSON,
ALCHEMY COMMUNICATIONS, INC., FROSTHAM       :
MARKETING, INC., PACIFICON INTERNATIONAL,          (Stanton, J.)
INC., LONGVIEW MEDIA, INC., ACCESS MEDIA      :
NETWORKS, INC., ALCHEMY F/X, INC.,
INNOVATIVE NETWORKS, INC., BINARY SOURCE,    :    **MEMORANDUM OF LAW IN**
INC., BROADCASTER, LLC, TRANSGLOBAL MEDIA,        **SUPPORT OF MOTIONS TO**
LLC, SOFTWARE PEOPLE, LLC and ACCESS MEDIA   :    **TRANSFER**
TECHNOLOGIES, LLC,

                        :

                Defendants,

                        :

           -and-

                        :

BROADCASTER, INC.,

                        :

              Nominal Defendant.

                        :

---------------------------------------------------------------------- X

<u>TABLE OF CONTENTS</u>

Page(s)

TABLE OF AUTHORITIES .................................................................................................ii

INTRODUCTION AND SUMMARY ARGUMENT ............................................................ 1

STATEMENT OF FACTS RELEVANT TO THE MOTION ...................................... 4

ARGUMENT ....................................................................................................................... 8

CONCLUSION ................................................................................................................... 18

TABLE OF AUTHORITIES

Page(s)

CASES

Berman v. Informix Corp.,
  30 F. Supp.2d 653 (S.D.N.Y. 1998)...........................................................8, 11, 15

Columbia Pictures Indus., Inc. v. Fung,
  447 F. Supp.2d at 309  (Stanton, J.).........................................................9, 11, 13

Hernandez v. Graebel Van Lines,
  761 F. Supp. 983 (S.D.N.Y. 1991) .................................................................11, 14

Lewis v. C.R.I. Inc.,.............................................................................................16
  03 Civ. 651, 2003 U.S. Dist. LEXIS 6362, at *16 (S.D.N.Y. Apr. 17, 2003)

Nat'l Union Fire Ins. Co. v. CPMS Investments,
  93 Civ. 5088, 5089, 5090, 1996 U.S. Dist. LEXIS 83 at * 6 (S.D.N.Y. Jan. 4, 1996)...........15

Royal & Sunalliance v. British Airways,
  167 F. Supp.2d 573 (S.D.N.Y. 2001).................................................................12

Strauss v. West Highland Capital, Inc.,
  00 Civ. 01184, 2000 U.S. Dist. LEXIS 14937, at *6 (S.D.N.Y. Oct. 5, 2000) .......................15

USA Interactive v. Savannah Air Center, LLC,
  No. 02 Civ. 3659, 2002 U.S. Dist. LEXIS 14476,  at *2 (S.D.N.Y. Aug. 7, 2002)
  (Stanton, J.)....................................................................................................8

WellQuest Int'l, Inc. v. Genesis Intermedia.com, Inc.,
  No. 00 Civ. 6558, 2001 U.S. Dist. LEXIS 16757 (S.D.N.Y. Oct. 18, 2001) .............11, 13, 17


STATUTES

15 U.S.C. § 78aa ................................................................................................10

18 U.S.C. 1965(a) ..............................................................................................10

28 U.S.C. § 1332................................................................................................9

28 U.S.C. § 1391(a) ...........................................................................................11

28 U.S.C.§ 1391(a)(2)........................................................................................11

28 U.S.C. § 1391(b)(2) .......................................................................................10

28 U.S.C. § 1404(a) .....................................................................................Passim

## TABLE OF AUTHORITIES

Page(s)

CPLR § 302.........................................................................................................................3

CPLR § 302(a)(1) ...........................................................................................................3, 10

CPLR § 302(a)(2) and (a)(3)...........................................................................................4, 10

New York's Business Corporation Law § 720 ....................................................................5

RICO ...........................................................................................................................4, 10, 14

Section 10(b) of the Securities Exchange Act of 1934, SEC Rule 10b-5 and the Federal
    Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968
    ("RICO")..................................................................................................................9

### OTHER AUTHORITIES

FTC case ....................................................................................................................... 14-15

Defendant Broadcaster, Inc. ("Broadcaster") respectfully submits this memorandum of law in support of the motions to transfer by defendants <u>Baytree Capital Assocs. v. Quan, et al.</u>, 08 Civ 01602 ["Baytree"] and <u>Goodman v. Broadcaster, et al.</u>, 08 Civ 02480 ["Goodman"] (as well as the two related defamation cases) to the District Court for the Central District of California.[1]  In both of these actions, the convenience of the witnesses, the locus of operative facts and the interests of justice overwhelmingly dictate transfer to the Central District of California.

## INTRODUCTION AND SUMMARY ARGUMENT

The <u>Baytree</u> and <u>Goodman</u> derivative actions are both based on the same three falsehoods: (1) that the FTC found that Access Media, Broadcaster's wholly owned subsidiary, was engaged in rampant consumer fraud; (2) that the defendants engaged in undisclosed related party transactions that enabled defendants to drain millions of dollars of Broadcaster assets for their personal benefits; and (3) that the "earn out" shares, which Baytree and Gardner proportionately received, that purportedly transferred majority control of Broadcaster to the individually named defendants should be voided because they were not properly earned.  The fact that the <u>Baytree</u> and <u>Goodman</u> actions are based on falsehoods is not relevant to this motion, but what is relevant is that the falsehoods themselves, the defendants who are their targets, the documents disproving the falsehoods, and the witnesses necessary to rebut these falsehoods emanate from or are almost exclusively located in California and therefore, the litigation regarding these falsehoods should be conducted in California.

---

[1] Defendant Broadcaster makes this motion solely to transfer venue and expressly reserves its right to object to jurisdiction (see infra discussion concerning New York's lack of personal jurisdiction over all of the defendants) and service, and to seek the dismissal of either or both actions on such bases at a later time if necessary.

Broadcaster is a Delaware corporation with its principal place of business in Los Angeles County, California. Its operations are based in California. With the exception of its CEO, who is a New Jersey resident, its current and former employees are all citizens of California. Broadcaster's documents, both paper and electronic, are exclusively located in California. The FTC litigation, on which Gardner and Goodman rely heavily to attempt to establish the purported consumer fraud, was litigated in California. The unrelated third parties that were paid to create traffic on the Broadcaster website are located in California. All of the alleged actions which purportedly give rise to the litigations, emanate from California. Importantly, there are no less than twenty-five material fact witnesses, virtually all of whom are located in California.

The very nature of the Baytree and Goodman allegations, steeped entirely in California activities, purportedly perpetrated by a vast majority of California-based defendants and material witnesses, necessarily compels and directly supports defendant Broadcaster's motion to transfer these actions to California, as well as their two related defamation offspring (Goodman v. Wade, et. al 08 Civ. 02851 and Gardner v. Wade, 08 Civ. 02850). Transfers of forum pursuant to 28 U.S.C. § 1404(a) are appropriate and essential where the convenience of the witnesses and the interest of justice aimed at the prevention of wasteful expenditures of time and money strongly favor a new forum, the transferee forum, over the original or transferor forum. A general threshold requirement, that the transferee forum of the Central District of California is a proper alternative forum as to personal jurisdiction, subject matter jurisdiction and venue, is readily met here.

In addition to party and witness convenience, this Court may also consider that plaintiffs' complaints do not adequately allege personal jurisdiction over the defendants in New

York because none of the defendants in either action have the requisite substantial contacts with New York. Eighteen of the twenty-one defendants in the <u>Baytree</u> action and three of the four defendants in the <u>Goodman</u> action, including the nominal defendant Broadcaster, are California citizens or domiciliaries. The non-California defendants are also not New York citizens or businesses: Martin Wade is a citizen of New Jersey, Richard Berman is a citizen of Connecticut, and Broadcaster LLC is a Nevada company. In short, none of the defendants are subject to any of the provisions of the New York long-arm statute, N.Y. CPLR § 302. Contrary to Goodman's baseless allegations and in light of the absence of any Baytree allegations on this subject, the defendants do not "transact" business in New York as per N.Y. CPLR § 302(a)(1). Furthermore, plaintiffs cannot, and blatantly do not, establish that <u>any</u> of the defendants "committed a tortious act" "within or without" New York State in accordance with N.Y. CPLR § 302(a)(2) and (a)(3).

Goodman, Gardner and allegedly Baytree are citizens of New York, but their citizenship is irrelevant because Plaintiffs have filed their claims as derivative actions and the convenience of a nominal representative plaintiff in a derivative action is of no relevance to a transfer motion based on convenience of the parties. It is beyond dispute that litigating the case in California is far more convenient to Broadcaster and the non-parties than litigating the case in New York and will further judicial economy, given that most discovery, and therefore resolution of any discovery disputes, will take place in the Central District of California.

In the end, because Plaintiffs are representatives in a derivative action bringing claims on behalf of a company based in California, there are simply no countervailing considerations mitigating against what is the clear conclusion that these meritless litigations must be transferred to the Central District of California, where they should have been filed in the first place, if at all.

## STATEMENT OF FACTS RELEVANT TO THE MOTION[2]

### Overview of the Actions

On or about February 15, 2008, Baytree Capital Associates ("Baytree") initiated a shareholder derivative action against Broadcaster, a number of its current and former officers and directors, and other defendants.  In its Complaint, Baytree seeks damages, injunctive relief, and the appointment of a receiver (on behalf of the company) for alleged securities fraud, breach of fiduciary duty by Broadcaster's officers and directors, corporate waste, unjust enrichment, conversion of corporate assets – all of which Baytree seeks to elevate to a near criminal conspiracy, so as to support four counts of a civil RICO claim.  See generally Complaint.

On or about March 3, 2008, Paul Goodman ("Goodman") commenced a "director's derivative action" pursuant to New York's Business Corporation Law § 720, stemming from substantially similar allegations of fiduciary breaches by certain Broadcaster officers or directors, corporate waste, improper related-company transactions, and the alleged improper issuance of certain "Earn Out Shares."  See generally Goodman Complaint.

### The Parties and the Allegations

Plaintiff Baytree, a "nominal plaintiff" for purposes of this derivative action, is an investment advisory firm with offices in New York and Las Vegas, Nevada, and provides capital resources to growth-oriented companies.  Baytree was founded by its Chief Executive Officer and Chairman, Michael Gardner.  In his Baytree web site biography, Gardner is described as an investment banker, "[k]nown for his aggressive equity trading and structured finance," who has raised over one billion dollars on behalf of his clients while he "divides his time between homes"

---

[2] The accompanying facts are set forth in the Declaration  of Eugene Licker, sworn to March 28, 2008 ("Licker Dec.") and the Declaration of Martin Wade, sworn to March 28, 2008 ("Wade Dec.")..

in New York and Las Vegas, Nevada. The current Baytree website references the company's investment in Broadcaster. Baytree describes Broadcaster, which operates the social networking website <www.broadcaster.com>, as "the next generation online community" which "[s]ince its launch in Q4 of 2006 … has amassed loyal audiences that upload and view millions of video files each month." Licker Dec., Exh. 1. Paul Goodman, whose status on Broadcaster's Board is the subject of this litigation, is a *pro se* plaintiff and an attorney.[3]

None of the allegations or claims made by Baytree in this action arise from the activities occurring in New York, nor does the Complaint so allege. Rather, the claims asserted therein arise from conduct which necessarily occurred in California and will be proven or disproven based upon the testimony of material witnesses who almost exclusively reside in California, leaving California as the proper venue in which this action and the related actions should be heard.

Baytree's Allegations Concerning the FTC Action:

Baytree's initial false assertion of misconduct is derived from allegations made in an August 2006 complaint filed by the Federal Trade Commission ("FTC") against, among others, Defendants AccessMedia Networks Inc. ("AccessMedia"), Alchemy Communications Inc. ("Alchemy"), Pacificon International, Inc. ("Pacificon'), Frostham Marketing Inc. ("Frostham"), Longview Media Inc. ("Longview"), Innovative Networks Inc. ("Innovative"), Binary Source Inc. ("Binary") and Andrew Garroni (collectively referred to in the Complaint as the "FTC Defendants"), and concerned an alleged unfair and deceptive computer scheme designed to coerce payments from consumers, which was never proved. Complaint at ¶¶ 36-37.

---

[3] Because the Baytree and Goodman actions raise identical factual issues involving the same material witnesses, Broadcaster's presentation of the Baytree allegations and the underlying transactions pertains equally to the Goodman action. Allegations and facts solely specific to the Goodman action are duly noted.

The FTC proceeding was conducted in California. Defendant Jason Brazell, who is a citizen of California, is alleged to have executed the FTC settlement agreement on Frostham's behalf. Complaint at ¶ 47. Mr. Garroni, also a California citizen, is alleged to have executed the settlement agreement on the behalf of both Longview and Pacificon. Complaint at ¶¶ 52-53. The Complaint similarly alleges that Mr. Garroni served as the president of Pacificon, Binary, and Longview (each a California corporation with its principal place of business in California), and had a "significant interest and participation in" Frostham (a Florida corporation with its principal place of business in California). Complaint at ¶¶ 9, 14-16. AccessMedia (a Delaware corporation with its principal place of business in California) is alleged to have registered Mr. Garroni's address with the California Secretary of State and to have transacted business out of offices sub-leased in California. Complaint at ¶ 17. Finally, it is also alleged that Alchemy has substantial ties to California, having been incorporated in the state and maintaining its principal place of business there. Complaint at ¶ 13.

Baytree's Allegations of Related-Party Transactions for Non-Existing Advertising Services

Baytree next falsely alleges that following the FTC settlement and resolution, certain members of the Broadcaster Board of Directors, Defendants Martin Wade, Blair Mills and Richard Berman (collectively referred to as the "Board Defendants") orchestrated and executed a fraudulent scheme, together with Defendant Nolan Quan, to loot the assets of Broadcaster by way of unjustified payments to certain Defendants for non-existing internet advertising campaigns and "traffic" generation. Complaint at ¶¶ 39-40, 44. Specifically, Plaintiff alleges that Defendants Frostham and Longview provided absolutely no services for the multi-million dollar payments they purportedly received. Complaint at ¶ 40. Mr. Brazell is alleged to be Frostham's President and Chief Executive Officer. Complaint at ¶ 10. Mr. Mills,

who resides in California, is alleged to have been Longview's Chief Financial Officer. Complaint at ¶ 50. The gravamen of the actions is that Defendant Nolan Quan, a California resident, personally profited from these transactions (Complaint at ¶¶ 5, 40, 48-49).

Baytree's Allegations of a "Unique Visitor Scheme"

Baytree falsely alleges that Defendant Alchemy (a California corporation with its principal place of business in California) was paid to reprogram and implement the Company's "software such that it caused a large number of computer users to involuntarily visit the Broadcaster.com website, allegedly creating the false impression that the website was generating a substantial amount of "unique visitor" traffic. Complaint at ¶¶ 40, 56. Baytree complains that based upon this alleged "Unique Visitor Scheme," Quan, the Board Defendants, and other unspecified Broadcaster employees caused false public statements to be made that the reported "unique visitors" were legitimate and that Broadcaster.com had become one of the most popular Internet sites. Complaint at ¶ 42. In addition, Plaintiff asserts that Broadcaster's payments to Alchemy for services, and license fees paid to Defendants Alchemy F/X, Inc. (a California corporation with its principal place of business in California) and Broadcaster LLC (a Nevada company) "can only be viewed as self-dealing and looting" by Defendants Quan, Sanger Robinson, and Rob Gould (each, a citizen of California). Complaint at ¶¶ 5, 11-12, 18, 21, 56.

This allegation revolves around Alchemy's rendition of services in California, Broadcaster's operations in California, and public statements and securities filings issued by Broadcaster from California.

Baytree's Allegations Concerning the "Earn Out Shares"

Plaintiff falsely alleges that the "Unique Visitor Scheme" was implemented such that Defendant Quan would be issued millions of shares of Broadcaster stock (pursuant to an

amended compensation package), providing him with a near majority of outstanding shares and virtual control of the Company. Complaint at ¶ 43. These allegations similarly raise issues of Broadcaster's California operations and governance.

## ARGUMENT

I.    **THESE ACTIONS SHOULD BE TRANSFERRED TO THE CENTRAL DISTRICT OF CALIFORNIA IN ACCORDANCE WITH 28 U.S.C. § 1404(a) FOR THE CONVENIENCE OF THE PARTIES, WITNESSES AND THE INTEREST OF JUSTICE**

Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) (2008). At the outset, the Court must evaluate two threshold requirements: (1) whether the proposed transferee court is a proper forum in which plaintiff could have commenced the case there originally and (2) whether in light of the convenience of the parties and witnesses in conjunction with the interest of justice a transfer is warranted. Berman v. Informix Corp., 30 F.Supp.2d 653, 656 (S.D.N.Y. 1998).

A.    **UNLIKE NEW YORK, THE CENTRAL DISTRICT OF CALIFORNIA IS A PROPER ALTERNATIVE FORUM FOR THIS ACTION**

The determination of a proper forum where the action "might have been brought" requires venue to be proper in the transferee forum and for defendants to be subject to personal jurisdiction. USA Interactive v. Savannah Air Center, LLC, No. 02 Civ. 3659, 2002 U.S. Dist. LEXIS 14476, at *2 (S.D.N.Y. Aug. 7, 2002) (Stanton, J.) (asserting that the "threshold question is whether the transferee district is one 'where venue might have been proper and where the defendant would have been subject to process.'" (quoting Dwyer v. General Motors Corp., 853 F.Supp. 690, 692 (S.D.N.Y. 1994))).

Personal jurisdiction exists in the Central District of California as Broadcaster maintains it principal place of business in Chatsworth, California. Conversely, New York personal jurisdiction over all of the defendants in the subject actions is lacking, as nearly all of the defendants are California residents and/or businesses. While even the "mere appearance of a colorable jurisdictional issue may be a factor in a court's decision to transfer venue under *28 U.S. § 1404(a)*" Columbia Pictures Indus., Inc., 447 F.Supp.2d at 309 (quoting WellQuest Int'l, Inc. v. Genesis Intermedia.com, Inc., No. 00 Civ. 6558, 2001 U.S. Dist. LEXIS 16757, at *20 (S.D.N.Y. Oct. 18, 2001) (quoting Worldwide Futgol Assocs., Inc. v. Event Enter. Inc., 983 F.Supp. 173, 182 (E.D.N.Y. 1997))), there exists a far more than "colorable" basis for the assertion of lack of jurisdiction here.

For example, neither Baytree nor Goodman can satisfy state and Federal Constitutional requirements necessary to establish personal jurisdiction over any of the defendants because none of the defendants have sufficiently substantial contacts with New York. As California residents and California companies, these defendants do not "transact[] any business" within New York (N.Y. CPLR § 302(a)(1)). The operative facts occurred in California, and none of the defendants "commit[ted] a tortious act" "within or without" the state of New York (N.Y. CPLR § 302(a)(2) and (a)(3)). The transfer of these actions from New York, a forum lacking sufficient contacts with all of the defendants to establish personal jurisdiction, to the Central District of California, a forum that undoubtedly has personal jurisdiction over all of the defendants, would be in the interests of judicial economy, and justice.

It cannot be questioned that venue properly lies in the Central District of California for the Baytree action pursuant to 28 U.S.C. § 1391(b)(2), which provides that a federal question action may be brought in "a judicial district in which a substantial part of the

events or omissions giving rise to the claim occurred . . . ." 28 U.S.C.§ 1391(b)(2) (2008).

Since Broadcaster maintains its principal place of business in California and all of the alleged

actions underlying the complaint substantially occurred in or emanated from California, the

Central District of California would qualify as an appropriate venue under the statute.  Further, in

securities cases, 15 U.S.C. § 78aa instructs that venue is proper in the district "wherein the

defendant is found or is an inhabitant or transacts business."  15 U.S.C. § 78aa (2008).    The

RICO venue provision, 18 U.S.C. 1965(a) establishes venue in "any district in which such person

resides, is found, has an agent, or transacts his affairs."  Broadcaster satisfies both of these venue

provision because it is found, resides and transacts business in the Central District of California.

  Venue is also proper in the Central District of California for the <u>Goodman</u> action,

according to 28 U.S.C. § 1391(a), the general venue statute governing diversity cases.   28

U.S.C.§ 1391(a)(2) provides that a diversity action may be brought in "a judicial district in which

a substantial part of the events or omissions giving rise to the claim occurred . . . ." 28 U.S.C.§

1391(a)(2) (2008).  As stated above, the Central District of California would be the situs of the

actions in question and therefore a proper venue under the statute.

  **B. THE CONVENIENCE OF THE WITNESSES AND THE
INTEREST OF JUSTICE FAVORS TRANSFER TO THE
CENTRAL DISTRICT OF CALIFORNIA**

  After determining that a movant has successfully established venue and personal

jurisdiction in the transferee forum, it must then be determined whether the transfer will

"promote convenience and fairness."  <u>WellQuest Int'l, Inc.</u>, 2001 U.S. Dist. LEXIS 16757, at *7.

As part of this process, courts consider the following relevant factors:

   (1) the convenience of the witnesses;
   (2) the convenience of the parties;
   (3) the location of the relevant documents and the relative ease of
   access to sources of proof;

(4) the locus of operative facts;
(5) the availability of process to compel the attendance of unwilling witnesses;
(6) the relative means of the parties;
(7) the forum's familiarity with governing law;
(8) the weight accorded to plaintiff's choice of forum; and
(9) trial efficiency and the interests of justice, based on the totality of the circumstances

Columbia Pictures Indus., Inc. v. Fung, 447 F.Supp.2d at 309 (Stanton, J.).  Courts are vested

with "broad discretion to balance these factors and to consider the evidence of convenience and

fairness on a case-by-case basis."  Id. at 309.  The overarching goal of §1404(a) is to "'prevent

waste "of time, energy and money" and "'to protect litigants, witnesses and the public against

unnecessary inconvenience and expense"'"  Hernandez v. Graebel Van Lines, 761 F.Supp. 983,

986 (S.D.N.Y. 1991) (quoting Van Dusen v. Barrack, 376 U.S. 612, 616 (1964) (quoting

Continental Grain Co. v. Barge FBL-585, 364 U.S. 19, 26-27 (1960))).

       The following is an evaluation of the above factors which demonstrates that both

individually and taken together, the relevant factors (and particularly the most critical ones)

clearly militate in favor of transferring this matter from the Southern District of New York to the

Central District of California.

### 1)      Convenience of the Witnesses

       The "'[c]onvenience of both the party and non-party witnesses is probably the

single-most important factor in the analysis of whether transfer should be granted.'"  Berman, 30

F.Supp.2d at 657 (quoting Frene N.V. v. Kmart Corp., 1998 U.S. Dist. LEXIS 11572, at *2

(S.D.N.Y. July 29, 1998)) (quoting Frasca v. Yaw, 787 F.Supp. 327, 331 (E.D.N.Y. 1992))).

The convenience of and the critical testimony that will be elicited from the witnesses in this

matter overwhelmingly favor transfer of this action to the District Court for the Central District

of California.  First and foremost, the vast majority of the material witnesses, eighteen of twenty-

five, are located in the Central District of California.  The complaints in both the <u>Baytree</u> and <u>Goodman</u> actions indisputably corroborate that almost all of the named defendants are California citizens or businesses (eighteen of the twenty-one defendants in <u>Baytree</u> and three of the four defendants in <u>Goodman</u>). One of the non-Californians , Mr. Wade, has indicated that California is a convenient forum for him and is, in any event, no less convenient than New York.  <u>See</u> Wade <u>Aff</u>. at ¶ 12.

In these cases, it is also a fact that virtually all of the <u>material</u> witnesses, both parties and non-parties, with knowledge of the salient events underlying the complaints, reside in California.  <u>Royal & Sunalliance v. British </u>Airways, 167 F.Supp.2d 573, 577 (S.D.N.Y. 2001) (granting motion to transfer on bases of multiple factors including, among others, that the disputed issue bore little connection to the original forum, the convenience of witnesses, and judicial economy).  Non-party witnesses not subject to the control of parties or possibly beyond the compulsion power of the court create distinct hurdles to gathering evidence and rightfully engender special consideration of their location of residence and convenience as part of a transfer motion.  Here, the vast majority of the non-party witnesses reside in California.

Recognizing that the party moving for transfer "'must clearly specify the key witnesses to be called and make a general statement of what their testimony will cover,'" such an analysis is presented in the accompanying Licker affidavit, which establishes that all of the twenty-five material witnesses reside outside of New York, and eighteen of these in California. <u>See</u> Licker <u>Aff</u>. at ¶ 20.  <u>Columbia Pictures Indus., Inc.</u>, 447 F.Supp.2d at 311 (<u>quoting</u> <u>Factors Etc., Inc. v. Pro Arts, Inc.</u>, 579 F.2d 215, 218 (2d Cir. 1978)).  The convenience and fairness of these material witnesses unequivocally favors transfer to the District Court of the Central District of California.

### 2)       Locus of Operative Facts

The location of the "operative events is a 'primary factor' in a transfer motion." WellQuest Int'l, Inc., 2001 U.S. Dist. LEXIS 16757, at *11.  The locus of operative facts of both the Baytree and Goodman actions lies in California.  It cannot reasonably be disputed that the events underlying the three falsehoods that constitute the core of Plaintiffs' complaints occurred in and emanated from California, and involve California entities or persons.  The FTC case, a prominent focus of the complaints, was filed and litigated in California.  The allegations concerning a fraudulent scheme revolving around unjustified payments to specific defendants for non-existing internet advertising campaigns and "traffic" generation all derive exclusively from California actions.  Even the third-party entity that monitored the traffic, Google Analytics, is based in California.  Advertisers, like Valueclick, that Plaintiffs claim do not exist, but were paid to create traffic at the Broadcaster website, are headquartered in California or have operations in California.  The IMSI and Access Media merger at the crux of the "Earn Out Shares" discussion and allegations of the "unique visitor scheme" allegedly used to artificially inflate public interest in the company occurred in and or emanated from California.

The alleged misrepresentations and omissions of the material facts in the SEC filings that constitute the basis of the 10(b) and 10b-5 causes of action occurred in and or emanated from California.  Furthermore, each of the predicate acts of the baseless RICO violations, including *inter alia* the above, all took place in and or emanated from California.  Additionally, the alleged breaches of fiduciary duties, corporate waste and "looting" of corporate assets, unjust enrichment, conversion of corporate assets and self-dealing via the improper authorization of claimed related party transactions inherently involved California actions.

Strikingly, none of the actions at the center of either the <u>Baytree</u> or the <u>Goodman</u> actions took place in New York.  There is no substantial connection between this action and New York, nor is there any distinct public interest arising in New York in adjudicating this matter.

### 3)    Location of relevant documents and the relative ease of access to sources of proof

The overwhelming majority of the relevant documents from Broadcaster and "related companies" are physically located in California.  All of Broadcaster's electronic data, including web data, and documents relating to the FTC case are in California.  To the extent electronic data must be obtained from servers or web hosts, the servers and hosts are located in California and professionals who are skilled in retrieving such data must do so in California.

### 4)    Convenience of the Parties

A "logical and relevant starting point is a consideration of the residence of the parties." <u>Hernandez</u>, 761 F.Supp. at 988 (S.D.N.Y. 1991)  As stated above, the vast majority of defendants reside in California, with a few exceptions and none of the defendants reside in New York.

The "convenience" for Baytree and Goodman is a far less compelling consideration, particularly because both plaintiffs are in their respective actions, merely nominal plaintiffs.  As one court observed, a

> [nominal] plaintiff's convenience is not at issue in this case since there is no dispute that the nominal plaintiff sues on behalf of a corporation chartered in Delaware and headquartered in [California] . . . .

<u>Strauss v. West Highland Capital, Inc.</u>, 00 Civ. 01184, 2000 U.S. Dist. LEXIS 14937, at *6 (S.D.N.Y. Oct. 5, 2000).  Therefore Baytree's New York place of residence does not weigh

heavily against transferring to California and should merit minimal, if any, consideration, especially in light of the convenience of the defendants via such transfer.

Similarly, Goodman, who resides in New York, commenced his action pursuant to the N.Y. B.C.L. 720 as a nominal plaintiff, in his capacity as a director, on behalf of Broadcaster. Both he and Michael Gardner, who at least part time lives a short distance from Los Angeles in Las Vegas, Nevada, have the capacity, and means, to travel to California. Goodman's status as a *pro se* plaintiff has no bearing, especially given that attorneys' fees for his representation are not an issue. As one Southern District court noted, the "fact that plaintiff resides in New York and is bringing this action *pro se* is in itself insufficient to shift the balance in favor of keeping the action in the Southern District of New York." Berman, 30 F.Supp.2d at 657 (granting motion to transfer *pro se* complaint from New York to California where essentially all of the witnesses and documents were located in California).

### 5)    Weight accorded to plaintiff's choice of forum

While a "plaintiff's choice of forum is normally accorded considerable deference, it is entitled to less weight where, as here, the case's operative facts have little or no connection with the chosen forum." Nat'l Union Fire Ins. Co. v. CPMS Investments, 93 Civ. 5088, 5089, 5090, 1996 U.S. Dist. LEXIS 83 at * 6 (S.D.N.Y. Jan. 4, 1996) (Stanton, J.). As stated above, the operative facts stemming from the California-based events have no connection with the plaintiffs' chosen forum of New York and in conjunction with the other factors warrant a transfer to California.

Additionally, in derivative actions, as the instant matters, the "weight given plaintiff's choice of forum is 'considerably weakened' because the plaintiff is only one of many potential plaintiffs, 'all of whom could with equal show of right go into their many home

courts.'" Strauss, 2000 U.S. Dist. LEXIS 14937, at *5 (quoting Koster v. Lumbermens Mut. Cas. Co., 330 U.S. 518, 524 (1947)). More specifically, "'[i]n shareholder derivative suits . . . the accidental residence of the named plaintiff is discounted in weighing the transfer factors' [a]nd where (as here) the forum lacks any significant contact with the activities alleged in the complaint, a plaintiff's choice of forum is 'diminished substantially.'" Id. at *6 (quoting IBJ Shroeder Bank & Trust Co. v. Mellon Bank, 730 F.Supp 1278, 1282 (S.D.N.Y. 1990) and quoting Studiengesellschaft Kohle MBH & Shell Oil Co., 93 Civ 1868, 1993 U.S. Dist. LEXIS 14131 (S.D.N.Y. Oct. 7, 1993)). See also Lewis v. C.R.I. Inc., 03 Civ. 651, 2003 U.S. Dist. LEXIS 6362, at *16 (S.D.N.Y. Apr. 17, 2003) (highlighting that "cases interpreting *section 1404(a)* have found that representative plaintiffs, as well as plaintiffs bringing derivative actions, are entitled to less deference than other plaintiffs.").[4]

### 6)    Trial efficiency and the interests of justice

Overall transfer is proper to "facilitate discovery when: (1) the action is in the early stages of litigation; and (ii) the transferee district is the place where the operative events occurred and where many of the witnesses and documents are located." WellQuest Int'l, Inc., 2001 U.S. Dist. LEXIS 16757, at *17-18. Here, the discovery process has not yet begun, making this case ripe for transfer. As illustrated earlier, California is overwhelmingly the location of the operative events, the majority of the witnesses and the documents. Additionally, the depositions

---

[4] It bears noting that in Lewis the derivative plaintiff also filed an Order to Show Cause for a Preliminary Injunction and Expedited discovery seeking to enjoin a limited partner vote on a liquidation proposal relating to the implications of a refinancing plan. The parties reached a standstill agreement allowing the vote to proceed but the defendant would provide certain documents on an expedited time table and take no public action furthering the liquidation until there was a decision on the motion. Id. at *4-*5. In evaluating the transfer motion for transfer to the District of Maryland, the Southern District of New York, in response to plaintiff's concern of the transfer motion's impact on his injunctive relief, declared that "*section 1404(a)* contains no exception for plaintiffs seeking injunctive relief." Id. at 17. The court remarked that if the plaintiff "wanted to avoid a transfer motion that might delay the proceedings, he could have filed this action in Maryland." Id. The court ultimately granted the transfer motion. Id. at *18.

of party and non-party witnesses, who also reside in California, must be taken in California at the site of their residence.  Given the extensive number of material witnesses residing in California, any "incremental inconvenience" to Goodman or Gardner by way of travel expenses to California would be "relatively minimal."  <u>See</u> <u>Berman</u>, 30 F.Supp.2d at 661.  The convenience to the material witnesses, both party and non-party, and especially cost savings of transfer overshadow any of plaintiffs' concerns and support transfer.

Even more compelling is how "transfer would further the interests of justice because it is unclear whether this Court can exercise personal jurisdiction over the defendants here. . . ."  <u>WellQuest Int'l, Inc.</u>, 2001 U.S. Dist. LEXIS 16757, at *18.  As illustrated above, plaintiffs do not successfully allege personal jurisdiction over the defendants in New York.  Importantly, the "apparent absence" of personal jurisdiction in New York " dictates in favor of transfer" to the Central District of California.  <u>Id</u>. at *20.

**CONCLUSION**

For all of the foregoing reasons, Defendant Broadcaster respectfully requests that the Court enter an order transferring the <u>Baytree</u> and <u>Goodman</u> actions, and the two other related actions which are before the court (<u>Goodman v. Wade, et. al</u> 08 Civ. 02851 and <u>Gardner v. Wade,</u> 08 Civ. 02850) to the District Court of the Central District of California on the grounds that California is a more convenient and appropriate forum and such transfer is in the interest of justice.

Dated: New York, New York
      March 28, 2008

Loeb & Loeb LLP

By: <u>/s/</u>_____

Michael P. Zweig (MPZ-5318)
Eugene R. Licker (EL -0334)
345 Park Avenue
New York, NY 10154
(212) 407-4000

*Attorneys for Defendant*
*Broadcaster, Inc.*

To:    Peter Sullivan
       Brian Gardner
       Steven R. Montgomery
       Sullivan & Gardner PC
       475 Park Avenue South
       New York, NY 10016
       (212) 687-5900
       *Attorneys for Nominal Plaintiff Baytree – the <u>Baytree</u> action*


       Paul Goodman
       420 Lexington Avenue, Suite 2320
       New York, New York 10170
       212-661-6800
       *Plaintiff Pro Se – the <u>Goodman</u> action*