**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------- X

BAYTREE CAPITAL ASSOCIATES, LLC, derivatively on : behalf of BROADCASTER INC.,

                     Plaintiff,                :

        -against-            :

NOLAN QUAN, MARTIN R. WADE III, BLAIR MILLS, : RICHARD BERMAN, ANDREW GARRONI, JASON BRAZELL, ROBERT GOULD, SANGER ROBINSON, : ALCHEMY COMMUNICATIONS, INC., FROSTHAM MARKETING, INC., PACIFICON INTERNATIONAL, : INC., LONGVIEW MEDIA, INC., ACCESS MEDIA NETWORKS, INC., ALCHEMY F/X, INC., : INNOVATIVE NETWORKS, INC., BINARY SOURCE, INC., BROADCASTER, LLC, TRANSGLOBAL MEDIA, : LLC, SOFTWARE PEOPLE, LLC and ACCESS MEDIA TECHNOLOGIES, LLC, : 

                   Defendants,        :

        -and-            :

BROADCASTER INC.,

             Nominal Defendant.     :

-------------------------------------------------------------------- X

Case No.: 08-cv-1602
(Stanton, J.)

**REPLY DECLARATION OF BLAIR MILLS IN FURTHER SUPPORT OF MOTIONS TO TRANSFER**

        BLAIR MILLS declares as follows pursuant to 28 U.S.C. § 1746:

     1.     I am a named Defendant in the related actions currently pending before this Court entitled Baytree Capital Assocs. v. Quan, et al., Index No. 08-cv-01602, Goodman v. Broadcaster, et al., Index No. 08-cv-2480, and Goodman v. Wade, et al., Index No. 08-cv-2851. In addition, I am a member of the board of directors and the Chief Financial Officer of Defendant Broadcaster Inc. ("Broadcaster" or the "Company"). Except as otherwise indicated, I have personal knowledge of the matters set forth herein, and respectfully submit this reply

declaration in further support of Defendants' motions to transfer this action, and the three actions

to which it is related, to the District Court for the Central District of California pursuant to 28

U.S.C. § 1404(a).

2.      I have reviewed the papers submitted on behalf of plaintiffs Baytree Capital

Associates, LLC ("Baytree") and Paul Goodman, which contain many erroneous statements, if

not out right falsehoods, that require correction, for the record.

3.      <u>The Retention of Daly & Pavlis LLC</u>:   Contrary to Baytree's assertions, the

Company never "admitted" that New York would be a convenient forum in which to litigate

these matters as a consequence of "its" decision to retain the Connecticut firm of Daly & Pavlis

to conduct an independent investigation.    That decision was in fact made by the Audit

Committee, not by the Board.   Indeed, it was initially proposed that the Company's securities

counsel, located in Florida, undertake the investigation.   Later, Mr. Goodman, as a member of

the Audit Committee, recommended the selection of the Daly & Pavlis firm, based upon its

experience and credentials in conducting such investigations – not its proximity to New York

City.   It is also noteworthy that following its retention, representatives of Daly & Pavlis began

their investigation by traveling to California to obtain documents and conduct preliminary

interviews, and by retaining a forensic investigative firm based in California.  On April 2, 2008, I

was contacted by Tom Seigel, of Daly & Pavlis.   For purposes of the independent investigation,

Mr. Seigel requested the contact information for approximately a dozen individuals who were

employed by Broadcaster or provided services to Broadcaster.   All but one of these individuals

reside in California.  Many of these individuals have been identified by Broadcaster in its motion

to transfer as being material witnesses.   Mr. Seigel has asked that I <u>not</u> disclose this list to the

potential interviewees to preserve the impartiality of the independent investigation; however, if

the Court so requests, I can ask the Company's Audit Committee to seek the independent investigator's consent to disclosure of the list to the Court, under seal, if necessary.

4.      Broadcaster Staff:  During 2006-2007, the period that Plaintiffs claim (wrongly) that monies were being "looted" from the Company, Broadcaster had over 40 employees, the overwhelming majority of which resided in California and worked in Broadcaster's approximately 17,000 square foot offices located in California.  While Plaintiffs assert that the Company has ceased to operate, in fact Broadcaster continues to employ a modest staff sufficient to carry out its web-based operations in a timely and efficient manner and to maintain its status as a public company.

5.      Location of Operations and Company Documents:  As Plaintiff Goodman admits, Broadcaster's corporate books and records are located at its offices in California.  *See* Goodman Opp. Mem. at 5.  Mr. Goodman makes the further, uniformed statement that these records are in electronic format (*see id.* at 5-6), which is simply false.  Nearly all of the checks, invoices and supporting documents which evidence the payment by Broadcaster of funds for services are in paper format and are located in California.  To the extent that the Company's Internet operations are at issue, it is worth noting that Broadcaster's servers are physically located in California, and that all Internet operations are conducted out of California.  To the extent that Goodman and Baytree are now challenging the legitimacy of Company records, including payments made to third parties, these records are located in California.  More importantly, most, if not all, of the witnesses that will be needed to provide the necessary testimony concerning authenticity and foundation for the admissibility of the documents are located in California.

6.      Location of Broadcaster Board meetings:  Goodman, Gardner and Orza each wrongly state in their declarations submitted in opposition that the Broadcaster board of directors

3

"regularly" conducted board meetings in "Broadcaster's office in New York." With a lone exception, the fact is that the Broadcaster board meetings were all conducted telephonically, with participants using a conference call-in number, so that participants could and would attend from any location. Attached hereto as **Exhibit 1** are representative examples of notices for Broadcaster's board meetings, evidencing that such meetings were conducted telephonically. While some individuals participated in board meetings by telephone from New York (using a conference room at the Baytree offices), others, such as myself and Vincent Orza, were connected to the telephonic conference from locations outside of New York, such as the Broadcaster offices in California or, in the case of Orza, from Oklahoma. Plaintiffs' attempts to characterize such meetings as "occurring" in New York, because certain participants phoned from offices located there is a fiction and is no more correct than it would be correct to characterize the meetings as being conducted in California or Oklahoma.

7.    The Baytree office used by Mr. Wade: I am aware of and have seen the small office which Baytree made available, as an accommodation, for the use of Martin Wade when he was in New York City. Such use was properly and accurately disclosed in Broadcaster's SEC filings. Baytree neither requested rent nor was paid rent for use of the office by Broadcaster, nor did the office have any signage, a directory listing, or a separate phone indicating that it was a Broadcaster office. Indeed, that Broadcaster did not maintain an "office" in New York is evidenced by the travel expense reports submitted to Broadcaster by Mr. Wade for his trips to New York City (similar to expense reports filed in connection with Mr. Wade's travels to other cities on the Company's behalf), none of which sought any compensation for the maintenance of a New York office or related office services. The only meeting of the Broadcaster board held in New York was conducted on May 9, 2007 (which coincided with a stockholder meeting held that

same day at Frances Tavern).  The meeting was conducted in New York only because Michael Gardner had asked that it be conducted there as he said he was experiencing difficulty traveling at that time.

8.    Michael Gardner's business travels:  As established in the declaration of Eugene Licker, dated March 28, 2008 (at ¶ 4 and Exh 1) filed in support of the current motions to transfer, Mr. Gardner biography on the Baytree website states that Mr. Gardner "divides his time between homes" in New York and Las Vegas, Nevada.  The Company's business records similarly indicate that Mr. Gardner traveled to Nevada and California just last year.  As the attached invoices submitted by Baytree evidence, Mr. Gardner and his Baytree associates were amenable to traveling (and overnight stay) in Nevada and California for business purposes – all in luxury accommodations.  *See* **Exhibit 2.**    According to his physician, Mr. Gardner will be able to travel, whether to California, Las Vegas, or elsewhere in approximately two months.  *See* Exhibit 1 to Declaration of Michael Gardner, dated April 6, 2008.  Indeed, nothing filed in opposition to the current motions even remotely suggests that Mr. Gardner will somehow be prevented from providing deposition testimony or attending hearings if these actions were transferred to California.

9.    Employee Compensation:  Mr. Goodman's sworn testimony concerning employee compensation is also incorrect.  Contrary to Mr. Goodman's bald assertion to the contrary, Nolan Quan is not paid a salary by the Company.  Mr. Wade's salary and bonus (a portion of which was paid in recognition for an extraordinary $8 million asset sale arranged by Mr. Wade) was made pursuant to an employment agreement with the Company, supported by Michael Gardner, among others.  Thus, in 2006 Mr. Wade received a salary of $244,940 and a bonus of $415,000.  In 2007, Mr. Wade received a salary of $225,000 and a bonus of $160,000.  A true and correct

copy of the Company's executive compensation disclosure in its annual Form 10K filing evidencing same is attached hereto as **Exhibit 3.**

10.    <u>The FTC Action</u>:  Contrary to Plaintiff Baytree's unsworn statements to the Court in opposition (*see* Baytree Opp. Mem. at 12), their April 4, 2008 letter to the Court (at fn. 4), and Goodman's representations in open Court (*see* Transcript of Proceedings dated March 25, 2008 at 28:18-19), Broadcaster did not pay Loeb & Loeb $1 million for representing the Company or Broadcaster's "shareholder representative" in the FTC Action.  Indeed, Broadcaster was not a party in the FTC Action.  Nor did Andrew Garroni ever serve as Broadcaster's "shareholder representative" – contrary to Plaintiffs' repeated misstatements.  Corporate records reflect that AccessMedia Networks Inc. (now, a Broadcaster subsidiary) was represented in the FTC Action by Fulbright & Jaworski LLP, and paid $227,414.57 in connection with that representation.  Corporate records similarly reflect that Loeb & Loeb was paid $403,071.19 in connection with its successful representation of certain individuals and entities in the FTC Action.

11.    <u>Removal of Directors by Shareholders</u>:  Although Bruce Galloway is not even mentioned in Plaintiffs' respective complaints, both Goodman (*see* Goodman Opp. Mem. at 5) and Baytree (*see* Sullivan Decl. at ¶ 4) now claim that Galloway is a "material witness" in regard to these actions, purportedly because he will testify to events which led to his "resignation."  No impropriety is, or could be alleged, by Plaintiffs, however, in respect to Galloway's removal from the Broadcaster Board of Directors.  Michael Gardner sought the resignations of the entire Board of Directors, explaining that he had not yet decided on which Board members he wanted to re-elect, but Mr. Galloway never resigned.  Indeed, contrary to Baytree's assertion that Mr. Galloway "resigned his position," it was in fact Michael Gardner who exercised his right as a shareholder to not <u>re-elect</u> Mr. Galloway to the Broadcaster board of directors.  This was

publicly disclosed in the Company's April 10, 2007 Schedule 14C, attached in relevant part as **Exhibit 4.** Mr. Gardner, together with Mr. Quan (pursuant to a voting agreement then in effect between them), exercised a controlling shareholder interest. As the Company's April 10, 2007 disclosure states: "We have been advised by our majority shareholders, Messrs. Quan and Gardner, that they do not intend to nominate or vote for Messrs. Binn, Falcone, Galloway and Perlyn at the Annual Meeting." (Emphasis added). In short, the reason Mr. Galloway ceased serving as a member of Broadcaster's Board of Directors is that Michael Gardner no longer wanted Mr. Galloway on the Board and Gardner refused to vote for him.

12.    Witnesses concerning "Investor Relations": As with their assertions concerning Mr. Galloway, both Goodman and Baytree wrongly claim that certain undisclosed individuals employed by New York "investor relations" or "marketing" organizations are "material" witnesses in these actions. *See* Goodman Opp. Mem. at 5 (asserting that Investor Relations Group, Inc. is a material witness); Sullivan Decl. at ¶¶ 17-18 (asserting that representatives of Investor Relations Group, Inc. and Rubenstein Associates will be material witnesses). Here, too, Plaintiffs are attempting to manufacture "material" witnesses located in New York. In fact, Plaintiffs' respective complaints make no reference to either Investor Relations Group, Inc. or Rubenstein Associates, and allege no impropriety arising from their presentations. Accordingly, based on Plaintiffs' respective complaints, such proposed witnesses are hardly material.

13.    Plaintiffs' Additional "Witnesses" have fabricated ties to New York: Plaintiffs also wrongly claim that certain entities which provided services to Broadcaster in California, will somehow present "material" corporate representatives located in New York. This is yet another attempt by Plaintiffs to manufacture "material" witnesses with contacts with New York. No material witness from the entities Google Analytics, ValueClick Media or Ad On Network are

located in New York as Plaintiffs claim. *See* Sullivan Decl. at ¶¶ 14-16; Goodman Opp. Mem. at 5. As Defendants properly disclosed, Google Analytics is a company located in Mountain View California. *See* **Exhibit 5,** Terms of Service at ¶ 17 (providing that all notices to Google be sent to its offices in Mountain View, California). Plaintiffs have proffered no evidence to support their assertions that Google Analytics will produce a "material" witness from New York. Similarly, Broadcaster's contacts with ValueClick , Victoria Beyer and Anne Greene, are both located in ValueClick's California offices. *See* **Exhibit 6,** ValueClick Web Site (disclosing that its corporate headquarters is located in Westlake Village, California). Here, too, Plaintiffs have failed to identify any witness employed by ValueClick who is purportedly located in New York. Finally, the knowledgeable representative of Ad On Network, Matt Papke, works out of Ad On Network's offices in Phoenix, Arizona. *See* **Exhibit 7,** Ad On Network web site. Again, Plaintiffs fail to identify any material representative of Ad On Network – or its asserted "ownership" – located in New York.

14.    Finally, contrary to Plaintiffs' repeated assertions, Broadcaster (and the other Defendants) have real and significant interests in the subject and outcome of these transfer motions. Nearly all of the parties (many of whom are Broadcaster employees) and the material witnesses are located in California, as are Broadcaster's offices, operations and records. The costs of defending these multiple related actions in New York rises exponentially. In addition to trial expenses, Plaintiffs would undoubtedly insist that depositions also be conducted in New York, increasing the cost even further. Although Broadcaster's staff is much reduced, the Company employees are fully engaged and litigation in New York, as well as the numerous cross-country trips that would be attendant to such litigation, would cause a serious disruption of Broadcaster's daily operations. Indeed, to the extent that Goodman and Baytree are pursuing

what they believe to be the best interests of Broadcaster, those interests are best served by transferring these actions to California.

I declare under penalties of perjury that the foregoing is true and correct.

Dated: New York, New York
        April 9, 2008

_____
                BLAIR MILLS

**EXHIBIT 1**

-----Original Message-----
From: Blair Mills [mailto:blair@broadcaster.com]
Sent: Monday, February 04, 2008 2:50 PM
To: Martin Wade; Richard Berman; Paul Goodman; Vincent F Orza Jr
Cc: Leslie Marlow; Hank Gracin
Subject: Board meeting for 3PM EST Monday February 4, 2008


Additional information Re: 1.

Martin Wade is calling a Board of Directors meeting for Monday,  February 4, 2008 at 3pm (EST).

The agenda is:

1. Corporate Governance
2. Review of Related Party Transactions

A call in number will be forwarded.


Yours truly,


Blair Mills

-----Original Message-----
From: Blair Mills [mailto:blair@broadcaster.com]
Sent: Friday, February 01, 2008 2:54 PM
To: Richard Berman; Martin Wade; Paul Goodman; Vincent F Orza Jr
Cc: Hank Gracin; Leslie Marlow
Subject: Board meeting for 3PM EST Monday February 4, 2008


Martin Wade is calling a Board of Directors meeting for Monday, February 4, 2008 at 3pm (EST).

The agenda is:

1.  Corporate Governance
2.  Review of Related Party Transactions

A call in number will be forwarded.


Yours truly,


Blair Mills

**EXHIBIT 2**

APR-18-07  13:14   From:0000000000                    0000000000              T-593  P.02/07  Job-888



# BAYTREE CAPITAL
## ASSOCIATES LLC

MAIN OFFICE
40 Wall Street
New York, NY 10005
Tel 212 509 1700
Fax 212 363 4231

2300 W. Sahara Avenue
Las Vegas, NV 89102
Tel 702 247 1701
Fax 702 221 0888

April 18, 2007

| Quantity | Date | Description | Amount |
|---|---|---|---|
| 1 | 2/11/07 | AA – Business Class Ticket NY to LA/CA | $4,720.00 |
| 1 | 2/11/07 | AA – Business Class Ticket NY to LA/CA | $4,720.00 |
| 1 | 2/11/07 | AA – Business Class Ticket NYB to LA/CA | $4720.00 |
| 1 | 2/14/07 | Four Seasons Hotel CA Inv # 6395 | $1,038.36 |
| 1 | 2/14/07 | Four Seasons Hotel CA Inv # 6394 | $3,493.08 |
| 1 | 2/14/07 | Four Seasons Hotel CA Inv # 6374 | $649.00 |
| 1 | 2/14/07 | Business Class CA to LV/NV 1491 | $5,551.29 |
| | | **Total:** | **$24,891.73** |

| | |
|---|---|
| Date Received | 4/2/07 |
| Document Move Date | 4/2/07 |
| Description | Accrue & rec. |
| GL # 14,340.44 | 2208 00-20 |
| GL # | |
| 1st Approval | |
| 2nd Approval | |
| Controller | |
| Accountant | DC |
| Date Posted | 4/27/07 |

# BAYTREE CAPITAL
## ASSOCIATES LLC

**MAIN OFFICE**
40 Wall Street
New York, NY 10005
Tel 212 509 1700
Fax 212 363 4231

2300 W. Sahara Avenue
Las Vegas, NV 89102
Tel 702 247 1701
Fax 702 221 0888

## TELEFAX COVER SHEET

## CONFIDENTIAL

Please deliver the following pages to:

| | |
|---|---|
| NAME: | Blair Mills |
| FIRM: | |
| FAX NO.: | (818) 206-9371 |
| FROM: | **Michael Gardner / Ila Jurczuk** |
| DATE: | April 18, 2007 |

Total number of pages (including cover sheet): **7**

If you do not receive all of the pages, please call (212) 509-1700 as soon as possible.

## COMMENTS:

Blair,

Please find attached an invoice for CA trip 2/11-2/14. Please note we reduced the air fare to AA business class tickets.

Let me hear from you if you have any questions.

Ila Jurczuk

*Approve d*

*Mod K Wch*

**\*CONFIDENTIALITY NOTE\***
This facsimile is intended only for the person or entity to which it is addressed and may contain information that is privileged, confidential or otherwise protected from disclosure. Dissemination, distribution or copying of this facsimile or the information herein by anyone other than the intended recipient is prohibited. If you have received this facsimile in error, please notify us immediately by telephone and return the facsimile by mail. Thank you.



**sentient**
JET MEMBERSHIP

| | |
|---|---|
| **Invoice** | **113948** |
| **Date** | **2/14/2007** |
| **Page** | **1 of 1** |

| | |
|---|---|
| Michael Gardner | |
| The Trump Building | |
| 40 Wall Street | |
| 58th Floor | |
| Manhattan, NY 10005 | |

| Customer No. | Fax No. |
|---|---|
| 1491 | -- |

| | |
|---|---|
| **TravelCard #:** | **916042895184** |
| **Flight Date:** | **2/14/2007   8:00:00PM** |
| **Miles:** | **0** |

1 hr. 6 min →

| | | | | |
|---|---|---|---|---|
| TOLD-FLIGHT | 02/14/07: Burbank, CA to Las Vegas, NV<br>Aircraft Category:    Light Jet<br>Flight Type:    OneWay | 1.30 | 3,600.00 | 4,680.00 |
| FUEL | Fuel Surcharge | 1.30 | 365.00 | 474.50 |

| | |
|---|---|
| **Subtotal:** | 5,154.5 |
| **Discount:** | 0.0 |
| **Seg/Use** | 10.2 |
| **Fees** | 0.0 |
| **Tax:** | 386.5 |
| **Total:** | 5,551.2 |

Thank you for using Sentient for your travel needs. We appreciate your business, and are delighted to be of service to you.

On every Sentient flight, we strive for nothing less than your total satisfaction. Rest assured that Sentient puts safety first. As a result, Sentient cannot be responsible for delays due to adverse weather, unforeseeable mechanical difficulties, or other safety-related matters. Please also note that use of flight phone, changes in itinerary, and additional or custom catering may result in extra charges. Sentient reserves the right to assess cancellation fees of up to 100% of the confirmed flight amount if cancellation occurs within 10 hours of confirmed departure time for standard trips and 48 hours for peak day and international trips. Restrictions may apply. Please refer to your Terms and Conditions for additional detail.



**FOUR SEASONS HOTEL**
*Westlake Village, California*

Mr. Sean Deson

US
Tax ID

Date :            02/14/07
Time :            09:18
Room :            747
Receipt No. :     6374

## PAYMENT RECEIPT

| Date | Description | App. Code | Exp. date | Amount |
|------|-------------|-----------|-----------|--------|
| 02/14/07 | American Express XXXXXXXXXX3002 XX/XX | _106495 | XX/XX | 649.00USD |

Guest Signature

Cashier No.     125

Two Dole Drive, Westlake Village, California, U.S.A. 91362
Tel. 1 (818) 575-3000  Fax. 1 (818) 575-3100
www.fourseasons.com/westlakevillage

APR-16-07  13:15   From:0000000000                    0000000000              1-593  P.05/07  Job-888



# FOUR SEASONS HOTEL
*Westlake Village, California*

Mr. Michael Gardner
40 Wall Street
New York, NY 10005
US
Tax ID

| | |
|---|---|
| **Date :** | 02/14/07 |
| **Time :** | 10:49 |
| **Room :** | 614 |
| **Receipt No. :** | 6394 |

## PAYMENT RECEIPT

| Date | Description | App. Code | Exp. date | Amount |
|---|---|---|---|---|
| 02/14/07 | American Express  XXXXXXXXXXX3002  XX/XX | _125230 | XX/XX | 3,493.08USD |

Guest Signature

Cashier No.        125

Two Dole Drive, Westlake Village, California, U.S.A.  91362
Tel. 1 (818) 575-3000  Fax. 1 (818) 575-3100
www.fourseasons.com/westlakevillage

APR-18-07  13:14   FROM:0000000000          0000000000       1-593  P.04/07  JOB-888



### FOUR SEASONS HOTEL
*Westlake Village, California*

Ms. Ila-Iwona Jurczuk
40 Wall Street 58th Floor
New York, NY 10005
US
Tax ID

| | |
|---|---|
| **Date :** | 02/14/07 |
| **Time :** | 10:51 |
| **Room :** | 743 |
| **Receipt No. :** | 6395 |

## PAYMENT RECEIPT

| Date | Description | App. Code | Exp. date | Amount |
|---|---|---|---|---|
| 02/14/07 | American Express  XXXXXXXXXXX3002  XX/XX | _147442 | XX/XX | 1,038.36USD |

**Guest Signature**

**Cashier No.**      125

Two Dole Drive, Westlake Village, California, U.S.A. 91362
Tel. 1 (818) 575-3000  Fax. 1 (818) 575-3100
www.fourseasons.com/westlakevillage

APR-18-07  13:14  FROM:0000000000                          0000000000          1-593  P.03/07  JOB-888



# Invoice

| Date | Invoice No. |
|------|-------------|
| 2/11/2007 | 1844 |

2 Thunderbolt Dr.
Millville, NJ  08332

Phone No.:(856) 825-4540  Fax No.:(856) 825-4548

| Bill To |
|---------|
| BAYTREE CAPITAL ASSOCIATES
THE TRUMP BUILDING
40 WALL STREET
NEW YORK, NY 10005 |

| Fax Number | P.O. No. | Terms | Account No. |
|------------|----------|-------|-------------|
| 212-363-4231 | | 10 DAYS | BAY211 |

| Quantity | Description | Rate | Amount |
|----------|-------------|------|--------|
| 1 | Charter - N399RV | 48,896.95 | 48,896.95 |
| 1 | Federal Excise Tax | 3,667.27 | 3,667.27 |
| 3 | Segment Fees | 3.30 | 9.90 |
| 1 | Catering | 416.34 | 416.34 |
| | | | |
| | TRIP DATE: 2/11/2007 | | |
| | P/U @ TEB-BUR/DROP OFF | | |
| | LEAD PAX:  MICHAEL GARDNER | | |

| | Total | $52,990.46 |
|--|-------|------------|

Catering, Hangar/De-Ice and Flitephone will be invoiced as invoices
are received, if not available at the time of invoicing.



# BAYTREE CAPITAL
ASSOCIATES LLC

MAIN OFFICE
40 Wall Street
New York, NY 10005
Tel 212 509 1700
Fax 212 363 4231

2300 W Sahara Avenue
Las Vegas, NV 89102
Tel 702 247 1701
Fax 702 221 0866

October 4, 2006

Broadcaster, Inc.
100 Rowland Way
Suite 300
Novato, CA 94945

Att: Mr. Ian Smith
By facsimile – 415-897-2544

Expenses of Business Trip for professional Services

| Date | Description | Amount |
|---|---|---|
| 9/5/06 | Ground transportation to Teterboro Airport | 272.30 |
| 9/5/06 | Business Jet – Teterboro – Burbank | 29,938.51 |
| 9/5/06-9/8/06 | Peninsula Hotel – Michael Gardner | 3,265.69 |
| | Sean Deson | 1,475.31 |
| 9/6/06 | Dinner – Nolan Quan, Andy Garroni | 225.52 |
| 9/8/06 | Business Jet – Burbank – Teterboro | 25,701.55 |
| 9/8/06 | Ground transportation to Gardner residence | 343.20 |

**Total Due:**          **$ 61,222.08**



# BAYTREE CAPITAL
### ASSOCIATES LLC

**MAIN OFFICE**
40 Wall Street
New York, NY 10005
Tel  212 509 1700
Fax 212 363 4231

2300 W. Sahara Avenue
Las Vegas, NV 89102
Tel  702 247 1701
Fax 702 221 0888

November 14, 2006

Broadcaster, Inc.
Att: Ian Smith
By Facsimile – 415-897-2544 – 6 pgs.

Expenses for professional services

| | | | |
|---|---|---|---|
| 11/1/06 | Ground transportation to Teterboro Airport | $ | 225.50** |
| 11/1/06-11/04/06 | Business Jet to and from Burbank | | 58,906.74* |
| 11/1/06-11/4/06 | Peninsula Hotel – Michael Gardner | | 2,351.51** |
| | Sean Deson | | 1,051.14** |

**$ 62,534.89**

\*      $58,906.74 – Please pay directly to
          Air Rutter International
          4310 Donald Douglas Drive # 202
          Long Beach, CA 90808

\*\*    $  3,628.15 -  Please pay directly to
          Baytree Capital Associates LLC

323721
577300
(1) 3,628.15

# THE PENINSULA
## BEVERLY HILLS

| | | |
|---|---|---|
| Mr Michael Gardner | Page | 1 |
| 40 Wallstreet | Room | PX306 |
| Floor 58 | Arrival | 11/01/06 |
| New York, NY 10005 | Departure | 11/04/06 |
| UNITED STATES | Person(s) | 2 |
| | Room Rate | 450.00/BHPLATNM |
| | Cashier | 16 GARETH |

INFORMATION BILL          Guest No.  243755    Confirmation  494080
The Peninsula Beverly Hills, 11/04/06 09:42

| DATE | DESCRIPTION | CHARGES US$ | CREDITS US$ |
|---|---|---|---|
| 11/01 | Room Rate | 450.00 | |
| 11/01 | Room Tax | 63.95 | |
| 11/01 | Occupancy Surcharge | 6.75 | |
| 11/02 | The Belvedere | 61.21 | |
| 11/02 | Room Rate | 450.00 | |
| 11/02 | Room Tax | 63.95 | |
| 11/02 | Occupancy Surcharge | 6.75 | |
| 11/03 | The Belvedere | 525.69 | |
| 11/03 | The Club | 171.94 | |
| 11/03 | Private Bar | 20.57 | |
| 11/03 | Room Rate | 450.00 | |
| 11/03 | Room Tax | 63.95 | |
| 11/03 | Occupancy Surcharge | 6.75 | |
| 11/04 | The Belvedere | 10.00 | |
| | Total | 2351.51 | |
| | Balance | 2351.51 USD | |

*We wish to thank you for choosing The Peninsula Beverly Hills.*
*Let us look after you again soon at a Peninsula hotel in Asia or the USA.*
*To make a reservation, just call any Peninsula hotel or e-mail us at*
*reservation@peninsula.com or visit www.peninsula.com.*

Remarks:

I agree that I am personally liable for the payment of this account, and if the person, company or association indicated does not settle within a reasonable period, my liability for payment should be joint and several with such person, company or association.

SIGNATURE

The Belvedere Hotel Partnership Correspondence address: 9882 South Santa Monica Boulevard, Beverly Hills, CA 90212, U.S.A.
Tel: (1-310) 551 2888  Fax: (1-310) 788 2319  E-mail: pbh@peninsula.com  Website: www.peninsula.com
Hong Kong • New York • Chicago • Beverly Hills • Bangkok • Beijing • Manila • Tokyo 2007

# THE PENINSULA
## BEVERLY HILLS

| | | |
|---|---|---|
| Mr Sean Deson | Page | 1 |
| 40 Wallstreet | Room | 432 |
| Floor 58 | Arrival | 11/01/06 |
| New York, NY 10005 | Departure | 11/04/06 |
| UNITED STATES | Person(s) | 2 |
| | Room Rate | 450.00/BHPLATNM |
| | Cashier | 46 JPANLI |

INFORMATION BILL          Guest No.   253971    Confirmation   494081
The Peninsula Beverly Hills, 11/03/06 09:10

| DATE | DESCRIPTION | CHARGES US$ | CREDITS US$ |
|---|---|---|---|
| 11/01 | Room Rate | 450.00 | |
| 11/01 | Room Tax | 63.95 | |
| 11/01 | Occupancy Surcharge | 6.75 | |
| 11/02 | Private Bar | 9.74 | |
| 11/02 | Room Rate | 450.00 | |
| 11/02 | Room Tax | 63.95 | |
| 11/02 | Occupancy Surcharge | 6.75 | |
| | Total | 1051.14 | |
| | Balance | 1051.14 USD | |

*We wish to thank you for choosing The Peninsula Beverly Hills.*
*Let us look after you again soon at a Peninsula hotel in Asia or the USA.*
*To make a reservation, just call any Peninsula hotel or e-mail us at*
*reservation@peninsula.com or visit www.peninsula.com.*

Remark:

I agree that I am personally liable for the payment of this account, and if the person, company or association indicated does not settle within a reasonable period, my liability for payment should be joint and several with such person, company or association

SIGNATURE

The Belvedere Hotel Partnership Correspondence address: 9882 South Santa Monica Boulevard, Beverly Hills, CA 90212, U.S.A.
Tel: (1-310) 551 2888   Fax: (1-310) 788 2319   E-mail: pbh@peninsula.com   Website: www.peninsula.com
Hong Kong • New York • Chicago • Beverly Hills • Bangkok • Beijing • Manila • Tokyo 2002

**Mary Baker**

**From:** mcruz [mcruz.unique@verizon.net]
**Sent:** Wednesday, November 01, 2006 2:22 PM
**To:** Mary Baker
**Subject:** Receipt for GARDNER, MICHAEL Trip #1530392

---

### THANK YOU FOR CHOOSING
### UNIQUE II LIMOUSINE

🗙

### *TRIP RECEIPT*

| | | | |
|---|---|---|---|
| **Trip #:** | 1530392 | **Passenger :** | MICHAEL GARDNER |
| **Reference #:** | 065896 | **Num of Passengers:** | 2 |
| **Pick-Up Time:** | 09:30AM | **Drop-Off Time:** | 10:20AM |
| **Trip Date:** | Wednesday Nov 1, 2006 | **Reserved By:** | MARY BAKER |
| **Service Type:** | 6 PASS STRETCH | **Trip Description:** | NYC/TEB |

**Routing & Pick-Up / Drop-Off Details:**

GARDNER, MICHAEL * BRISTOL HOTEL 210 E. 65TH ST.PAR BLDG. SEMI CIRCL MANHATTAN NY
THEN PICK UP SEAN DESON AT 222 WEST 83RD. ST. NYC
THEN GO TO JET AVIATION TEB TAIL # 460 F
6 PASSENGER STRETCH
CC ON FILE
1025 : I
EXTRA STOP AT 83RD AND BROADWAY
1120 : C

**Trip Charges:**

| | |
|---|---|
| **Basic Rate:** | $145.00 |
| **Parking:** | $0.00 |
| **Tolls:** | $6.00 |
| **Waiting Time:** | $0.00  : |
| **Early/Late Hour:** | $0.00 |
| **Extra Stops:** | $25.00 |
| **Holiday/Misc:** | $0.00 |
| **Gratuity:** | $29.00 |
| **Discount:** | -$0.00 |
| **Miscellaneous:** | $0.00 |
| **Administration Fee:** | $10.18 |
| **Gas Surcharge:** | $10.18 |
| **County Tax:** | $0.00   0.00% |
| **Tax/GST:** | $0.00 |
| **TOTAL DUE:** | $0.00 |

**Payments Received:** 11/01/2006 PMT: MASTER CARD XXXXXXXXX48135 Check/Auth# 065896 $225.50

11/14/2006

**PAYMENT**: Credit Card

**UNIQUE II LIMOUSINE**
216 Johnson Ave
Hackensack, NJ 07601
201-996-0140 Phone
201-996-0141
201-996-0145 Fax

11/14/2006

# EXHIBIT 3

**Item 10.     Executive Compensation**

The following table sets forth all compensation awarded, earned or paid for services rendered to Broadcaster and its subsidiaries in all capacities during each of the fiscal years ended June 30, 2007 and 2006 to (i) our Chief Executive Officer during fiscal 2007 and (ii) our two most highly compensated executive officers other than the Chief Executive Officer who were serving as executive officers at the end of fiscal 2007.

**Summary Compensation Table**

| Name and Principal Position (a) | Year (b) | Salary ($)(c) | Bonus ($)(d) | Option Awards ($)(f) | All Other Compensation ($)(i) | Total ($)(j) |
|---|---|---|---|---|---|---|
| Martin R. Wade, III | 2007 | $225,000 | $160,000 | $2,165,000 | $51,825(1)(2) | $2,601,825 |
| Chief Executive Officer | 2006 | $244,940 | $415,000 | $      0 | $13,727(1) | $   673,667 |
| | | | | | | |
| Blair Mills | 2007 | $122,116 | $15,000 | $87,000 | $  5,209(1) | $   229,325 |
| Chief Financial Officer | 2006 | $   8,000 | $      0 | $      0 | $      0 | $       8,000 |
| | | | | | | |
| Kathryn Felice | 2007 | $150,192 | $      0 | $130,000 | $  4,500(3) | $   280,192 |
| General Counsel | | | | | | |

(1)   Includes payments of medical and dental insurance premiums by the Company on behalf of he named officers' dependents.

(2)   Includes $34,000 in travel and entertainment expenses.

(3)   Represents director fees paid to Ms. Felice prior to becoming an executive officer. She was not re-elected as a director at the annual meeting of shareholders in May 2007 and resigned as an executive officer and employee in September 2007.

**Outstanding Awards at Fiscal Year End**

Listed below is information with respect to unexercised options, restricted stock that has not vested, and equity incentive plans for each named executive officer outstanding as of June 30, 2007:

OUTSTANDING EQUITY AWARDS AT FISCAL YEAR-END

| | OPTION AWARDS | | | | |
|---|---|---|---|---|---|
| Name (a) | Number of Securities Underlying Unexercised Options (#) Exercisable (b) | Number of Securities Underlying Unexercised Options (#) Unexercisable (c) | Equity Incentive Plan Awards: Number of Securities Underlying Unexercised Unearned Options (#) (d) | Option Exercise Price ($) (e) | Option Expiration Date (f) |
| Martin R. Wade, III | 1,898,334 | 1,700,000 | 1,700,000 | $1.50/$1.90 | 7/2008, 9/2016 |
| Blair Mills | 75,000 | 0 | 0 | $1.90 | 9/2016 |
| Kathryn Felice | 112,500 | 0 | 0 | $3.80/$3.76/$2.80 | 5/2016, 6/2016, 10/2016 |

**EXHIBIT 4**

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
**Washington, D.C. 20549**

**SCHEDULE 14C INFORMATION**

**Information Statement Pursuant to Section 14(c) of the Securities**
**Exchange Act of 1934 (Amendment No. )**

Check the appropriate box:

☐ Preliminary Information Statement

☐ Confidential, for Use of the Commission
Only (as permitted by Rule 14c-5(d)(2))

☒ Definitive Information Statement

# BROADCASTER, INC.

*(Name of Registrant as Specified In Its Charter)*

Payment of Filing Fee (Check the appropriate box):

☒ No fee required.

☐ Fee computed on table below per Exchange Act Rules 14c-5(g) and 0-11.

   (1)  Title of each class of securities to which transaction applies:

   (2)  Aggregate number of securities to which transaction applies:

   (3)  Per unit price or other underlying value of transaction computed pursuant to Exchange Act Rule 0-11 (Set forth the amount on which the filing fee is calculated and state how it was determined):

       $_____ per share as determined under Rule 0-11 under the Exchange Act.

   (4)  Proposed maximum aggregate value of transaction:

   (5)  Total fee paid:

☐ Fee paid previously with preliminary materials.

☐ Check box if any part of the fee is offset as provided by Exchange Act Rule 0-11(a)(2) and identify the filing for which the offsetting fee was paid previously. Identify the previous filing by registration statement number, or the Form or Schedule and the date of its filing.

   (1)  Amount previously paid:

   (2)  Form, Schedule or Registration Statement No.:

   (3)  Filing Party:

   (4)  Date Filed:

**Broadcaster, Inc.**
**9201 Oakdale Avenue, Suite 200**
**Chatsworth, CA 91311**

**April 10, 2007**

Re:    **Notice of an Annual Meeting of Shareholders to be Held May 9, 2007**

Dear Shareholders of Broadcaster, Inc.:

Please join us at the 2006 Annual Meeting of Shareholders (the "Annual Meeting") Broadcaster, Inc., a California corporation, ("Broadcaster-CA") will be held at Fraunces Tavern, 54 Pearl Street, New York, NY 10004 (corner of Pearl Street and Broad Street), on May 9, 2007, at 3:00 PM. (Eastern Daylight Savings Time) for the following purposes:

1.    To consider and vote upon the merger of Broadcaster-CA with and into its wholly-owned Delaware subsidiary, Broadcaster, Inc. ("the Surviving Corporation"), for the sole purpose of changing Broadcaster-CA's state of domicile and becoming a Delaware corporation;

2.    To elect up to five directors of the Surviving Corporation;

3.    To ratify the appointment of Choi, Kim & Park, LLP as the Surviving Corporation's independent registered accounting firm for the year ending June 30, 2007; and

4.    Any other business which may properly come before the Annual Meeting.

Shareholders of Broadcaster-CA as of the record date of April 3, 2007 may vote their shares at the Annual Meeting.

**Please note that because Messrs. Nolan Quan and Michael Gardner beneficially own approximately 66.3% of the outstanding shares of common stock as of the record date, they will have the power to pass the proposed corporate actions without the concurrence of any other shareholders.  They have advised us that they intend to vote together as disclosed in the accompanying Information Statement. For that reason, we are not soliciting proxies. We are not asking you for a proxy and you are requested not to send us a proxy.**

The accompanying Information Statement is furnished as required by the Rules of the Securities and Exchange Commission. It will be first mailed to shareholders on or about April 17, 2007. Please read the accompanying Information Statement carefully.

Very truly yours,

/s/  Martin R. Wade, III

Martin R. Wade, III, Chief Executive Officer

ELECTION OF DIRECTORS

... agement

... ...

... ...tionship, if any, with Company
... ...rman of the Board
... ...ecutive Officer and Director

... ...

... ...

... ...unsel and Director

... ... and Gardner, that they do not intend to nominate or vote for Messrs. Bina,
... ...th, they have agreed with Ms. Felice not to nominate or vote for her. They do
... ...te the two persons listed below.


... ... | Position with Broadcaster-CA
... ... | Chief Financial Officer
... ... | Trustee of a shareholder


... ... | Position with Broadcaster-CA
... ... | Chief Executive Officer and Director
... ... | Director
... ... | Director

... ...Officer. Previously, he served as Chief Financial Officer of AccessMedia
... ...ous management positions at several Internet-based businesses, including
... ...ough September 2006. Mr. Mills has also served as an independent consultant to
... ...hartered Accountant in Canada and a Certified Public Accountant in Illinois

... ...tion of Cyruli Shanks & Zizmor LLP and concentrates on the
... ...range of corporate and financing transactions including venture capital, angel
... ...aculty member of the Queens College Computer Science Department and is
... ...o became a director of Maxus Technology Corporation in December 2006. He
... ...1999. He serves on the Audit Committee of each of these corporations.
... ...New York and also holds a Bachelors and Masters Degree in Computer

... ...utive Officer of Broadcaster in August 2001. Prior to joining Broadcaster,
... ...Officer, with Digital Creative Development Corporation between 2000 and
... ...nications investment banker at Prudential Securities and from 1996 to 1998 as a
... ...dison. From 1991 to 1996, Mr. Wade was National Head of Investment Banking

**EXHIBIT 5**

Google Analytics – Features

Page 1 of 7

## Google Analytics

Home    Features    Support    Blog    Conversion University

# GOOGLE ANALYTICS TERMS OF SERVICE

The following are the terms and conditions for use of the Google Analytics service described herein (the "Service") between Google Inc. and you (either an individual or a legal entity that you represent as an authorized employee or agent) ("You"). Please read them carefully. BY CLICKING THE "I ACCEPT" BUTTON, COMPLETING THE REGISTRATION PROCESS AND/OR USING THE SERVICE, YOU ARE STATING THAT YOU ARE ELIGIBLE FOR AN ACCOUNT AND THAT YOU AGREE TO BE BOUND BY ALL OF THESE TERMS AND CONDITIONS OF THE SERVICE ("AGREEMENT"). The Service is offered to you conditioned on your acceptance without modification of the terms, conditions, and notices contained herein.

### 1. DEFINITIONS

"Account" refers to the billing account for the Service. All Profiles linked to a single Site will have their Page Views aggregated prior to determining the charge for the Service for that Site.

"Customer Data" means the data concerning the characteristics and activities of visitors to your website that is collected through use of the UTM and then forwarded to the Servers and analyzed by the Processing Software.

"Documentation" means any accompanying proprietary documentation made available to You by Google for use with the Processing Software, including any documentation available online or otherwise.

"Page View" is the unit of measurement for usage of the Service. A Page View is used when the UTM is executed on a web page accessed by a visitor, and processed as part of a Profile. A Page View will be incurred for each instance of the UTM on the web page, and for each Profile receiving information from the UTM for such web page.

"Processing Software" means the proprietary Google Analytics Software and any all upgrades to such, which analyzes the Customer Data and generates the Reports.

"Profile" means the collection of settings that together determine the information to be included in, or excluded from, a particular Report. For example, a Profile could be established to view a small portion of a web site as a unique Report. There can be multiple Profiles established under a single Site.

"Report" means the resulting analysis shown at www.google.com/analytics (or such other URL Google may provide from time to time) for an individual profile. The number of charts, graphs, and statistics contained in a Report varies with the edition of the Service.

"UTM" means the proprietary Google Analytics Tracking Code, which is installed on a web page for the purpose of collecting Customer Data, together with any fixes, updates and upgrades provided to you (collectively, the "UTM").

"Servers" means the servers controlled by Google (or its wholly owned subsidiaries) upon which the Processing Software and Customer Data are stored.

"Site" means a group of web pages that are linked to an Account and use the same UTM. Each Site consists of a default Profile that measures all pages within the Site. Additional Profiles can be established under a Site to evaluate subsections of a Site in greater detail.

"Software" means the UTM and the Processing Software.

2. FEES AND SERVICES . Subject to Section 15 herein, the Service is provided without charge to You for up to 5 million pageviews per month per account, and if You have an active Adwords campaign in good standing, the Service is provided without charge to You without a pageview limitation.

Google may change its fees and payment policies for the Service from time to time including but not limited to the addition of costs for geographic data, the importing of cost data from search engines, or other fees charged to Google or its wholly-owned subsidiaries by 3rd party vendors for the inclusion of data in the Service reports. The changes to the fees or payment policies are effective upon Your acceptance of such changes which will be posted at www.google.com/analytics (or such other URL Google may provide from time to time). Unless otherwise stated, all fees are quoted in U.S. Dollars. Any outstanding balance becomes immediately due and payable upon termination of this Agreement for any reason and any collection expenses (including attorneys' fees) incurred by Google will be included in the amount owed, and may be charged to the credit card or other billing mechanism associated with your Adwords account.

3. MEMBER ACCOUNT, PASSWORD, AND SECURITY . To register for the Service, You must complete the registration process by providing Google with current, complete and accurate information as prompted by the registration form, including Your e-mail address (username) and password. You shall protect your passwords and take full responsibility for Your own, and third party, use of Your accounts. You are solely responsible for any and all activities that occur under Your Account. You agree to notify Google immediately upon learning of any unauthorized use of Your Account or any other breach of security. From time to time, Google's (or its wholly-owned subsidiaries') support staff may log in to the Service under Your customer password in order to maintain or improve service, including to provide You assistance with technical or billing issues. You hereby acknowledge and consent to such access.

4. NONEXCLUSIVE LICENSE.  Google hereby grants You a limited, revocable, non-exclusive, non-sublicensable license to install, copy and use the UTM solely as necessary to use the Service for one or more web pages that You own and control (collectively, the "Website"). Subject to the terms and conditions of this Agreement, You may remotely access, view and download Your Reports stored at www.google.com/analytics (or such other URL Google may provide from time to time). Your license of, use of and access to the Software and the Service (which may include, without limitation, the Software, Documentation and the Reports) is conditioned upon Your compliance with the terms and conditions of the Agreement, including the following:

You will not nor will You allow any third party to (i) copy, modify, adapt, translate or otherwise create derivative works of the Software or the Documentation; (ii) reverse engineer, de-compile, disassemble or otherwise attempt to discover the source code of the

Software, except as expressly permitted by the law in effect in the jurisdiction in which You are located; (iii) rent, lease, sell, assign or otherwise transfer rights in or to the UTM, the Processing Software, the Documentation or the Service; (iv) remove any proprietary notices or labels on the Software or placed by the Service; or (v) use, post, transmit or introduce any device, software or routine which interferes or attempts to interfere with the operation of the Service or the Software. You will use the Software, Service and Reports solely for Your own internal use, and will not make the Software or Service available for timesharing, application service provider or service bureau use. You will comply with all applicable laws and regulations in Your use of and access to the Documentation, Software, Service and Reports.

This license will terminate immediately if You fail to comply with the terms of this Agreement. Upon such termination, You must destroy all originals and copies of the UTM in Your possession and so certify in writing to Google within three (3) business days of termination and cease any further use of the Service without the express written consent of Google.

5. CONFIDENTIALITY. "Confidential Information" includes any proprietary data and any other information disclosed by one party to the other in writing and marked "confidential" or disclosed orally and, within five business days, reduced to writing and marked "confidential". Notwithstanding the foregoing, Confidential Information will not include any information that is or becomes known to the general public, which is already in the receiving party's possession prior to disclosure by a party or which is independently developed by the receiving party without the use of Confidential Information. Neither party will use or disclose the other party's Confidential Information without the other's prior written consent except for the purpose of performing its obligations under this Agreement or if required by law, regulation or court order. In which case, the party being compelled to disclose Confidential Information will give the other party as much notice as is reasonably practicable prior to disclosing such information. Upon termination of this Agreement, the parties will promptly either return or destroy all Confidential Information and, upon request, provide written certification of such. You are responsible for safeguarding the confidentiality of Your password(s) and user name(s) issued to You by Google, and for any use or misuse of Your account resulting from any third party using a password or user name issued to You. You agree to immediately notify Google of any unauthorized use of Your account or any other breach of security known to You.

6. INFORMATION RIGHTS AND PUBLICITY. Google and its wholly owned subsidiaries may retain and use, subject to the terms of its Privacy Policy (located at http://www.google.com/privacy.html , or such other URL as Google may provide from time to time), information collected by Your use of the Service. Google will not share information associated with You or your Site with any third parties unless Google (i) has Your consent; (ii) concludes that it is required by law or has a good faith belief that access, preservation or disclosure of such information is reasonably necessary to protect the rights, property or safety of Google, its users or the public; or (iii) provides such information in certain limited circumstances to third parties to carry out tasks on Google's behalf (e.g., billing or data storage) with strict restrictions that prevent the data from being used or shared except as directed by Google. When this is done, it is subject to agreements that oblige those parties to process such information only on Google's instructions and in compliance with this Agreement and appropriate confidentiality and security measures.

7. PRIVACY. You will not (and will not allow any third party to) use the Service to track or collect personally identifiable information of Internet users, nor will You (or will You allow any third party to) associate any data gathered from Your website(s) (or such third parties' website(s)) with any personally identifying information from any source as part of Your use (or such third parties' use) of the Service. You will have and abide by an appropriate privacy policy and will comply with all applicable laws relating to the collection of information from visitors to Your websites. You must post a privacy policy and that policy must provide notice of your use of a cookie that collects anonymous traffic data.

8. INDEMNIFICATION . You agree to indemnify, hold harmless and defend Google and its wholly owned subsidiaries, at Your

...

expense, any and all third-party claims, actions, proceedings, and suits brought against Google or any of its officers, directors, employees, agents or affiliates, and all related liabilities, damages, settlements, penalties, fines, costs or expenses (including, without limitation, reasonable attorneys' fees and other litigation expenses) incurred by Google or any of its officers, directors, employees, agents or affiliates, arising out of or relating to (i) Your breach of any term or condition of this Agreement, (ii) Your use of the Service, (iii) Your violations of applicable laws, rules or regulations in connection with the Service, or (iv) Your Brand Features. In such a case, Google will provide You with written notice of such claim, suit or action. You shall cooperate as fully as reasonably required in the defense of any claim. Google reserves the right, at its own expense, to assume the exclusive defense and control of any matter subject to indemnification by You.

9. THIRD PARTIES. If You provide access to Your Account or any portion thereof to any third party or use the Service to collect information on behalf of any third party ("Third Party"), whether or not You are authorized to do so by Google or its wholly owned subsidiaries, the terms of this Section 9 shall apply to You.

If You use the Service on behalf of any Third Party, You represent and warrant that (a) You are authorized to act on behalf of, and bind to this Agreement, that Third Party , (b) as between the Third Party and You, the Third Party owns any rights to Customer Data in the applicable account, and (c) You shall not disclose Third Party's Customer Data to any other party without the Third Party's consent.

You shall ensure that each Third Party is bound by and abides by the terms of this Agreement. Google and its wholly owned subsidiaries make no representations or warranties for the direct or indirect benefit of any Third Party. With respect to Third Parties, You shall take all measures necessary to disclaim any and all representations or warranties that may pertain to Google and its wholly owned subsidiaries, the Service, the Software or the Reports, or use thereof. You agree to indemnify, hold harmless and defend Google and its wholly owned subsidiaries, at Your expense, against any and all third-party claims, actions, proceedings, and suits brought against Google or any of its officers, directors, employees, agents or affiliates, and all related liabilities, damages, settlements, penalties, fines, costs or expenses (including, without limitation, reasonable attorneys' fees and other litigation expenses) incurred by Google, or any of its officers, directors, employees, agents or affiliates, arising out of or relating to (a) any representations and warranties made by You concerning any aspect of the Service, the Software or Reports to Third Parties; (b) any claims made by or on behalf of any Third Party pertaining directly or indirectly to Your use of the Service, the Software or Reports; (c) violations of Your obligations of privacy to any Third Party; and (d) any claims with respect to acts or omissions of Third Parties in connection with the Services, the Software or Reports.

10. DISCLAIMER OF WARRANTIES . The information and services included in or available through the Service, including the Reports, may include inaccuracies or typographical errors. Changes are periodically added to the information herein. Google and/or its respective suppliers may make improvements and/or changes in the Service or Software at any time, with or without notice. Google does not represent or warrant that the Service will be uninterrupted or error-free, that defects will be corrected, or that the Service, the Software or any other software on the Server are free of viruses or other harmful components. Google does not warrant or represent that the use of the Service or the Reports will be correct, accurate, timely or otherwise reliable. You specifically agree that Google and its wholly owned subsidiaries shall not be responsible for unauthorized access to or alteration of the Customer Data or data from Your Website.

THE SERVICE, THE SOFTWARE AND REPORTS ARE PROVIDED "AS IS" AND THERE ARE NO WARRANTIES, CLAIMS OR REPRESENTATIONS MADE BY GOOGLE AND/OR ITS SUBSIDIARIES AND AFFILIATES, EITHER EXPRESS, IMPLIED, OR STATUTORY, WITH RESPECT TO THE SERVICE, THE SOFTWARE, THE DOCUMENTATION AND REPORTS, INCLUDING

WARRANTIES OF QUALITY, PERFORMANCE, NON-INFRINGEMENT, MERCHANTABILITY, OR FITNESS FOR A PARTICULAR PURPOSE, NOR ARE THERE ANY WARRANTIES CREATED BY COURSE OF DEALING, COURSE OF PERFORMANCE, OR TRADE USAGE. GOOGLE DOES NOT WARRANT THAT THE SERVICE, THE SOFTWARE OR REPORTS WILL MEET YOUR NEEDS OR BE FREE FROM ERRORS, OR THAT THE OPERATION OF THE SERVICE WILL BE UNINTERRUPTED. THE FOREGOING EXCLUSIONS AND DISCLAIMERS ARE AN ESSENTIAL PART OF THIS AGREEMENT AND FORMED THE BASIS FOR DETERMINING THE PRICE CHARGED FOR THE SERVICE. SOME STATES DO NOT ALLOW EXCLUSION OF AN IMPLIED WARRANTY, SO THIS DISCLAIMER MAY NOT APPLY TO YOU.

11. LIMITATION OF LIABILITY. GOOGLE AND ITS WHOLLY OWNED SUBSIDIARIES WILL NOT BE LIABLE TO USER OR ANY THIRD-PARTY CLAIMANT FOR ANY INDIRECT, SPECIAL, PUNITIVE, CONSEQUENTIAL (INCLUDING, WITHOUT LIMITATION, LOST PROFITS OR LOST DATA COLLECTED THROUGH THE SERVICE), OR INCIDENTAL DAMAGES, WHETHER BASED ON A CLAIM OR ACTION OF CONTRACT, WARRANTY, NEGLIGENCE, STRICT LIABILITY, OR OTHER TORT, BREACH OF ANY STATUTORY DUTY, INDEMNITY OR CONTRIBUTION, OR OTHERWISE, EVEN IF GOOGLE AND/OR ITS SUBSIDIARIES AND AFFILIATES HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. THE EXCLUSION CONTAINED IN THIS PARAGRAPH SHALL APPLY REGARDLESS OF THE FAILURE OF THE EXCLUSIVE REMEDY PROVIDED IN THE FOLLOWING PARAGRAPH. SOME STATES DO NOT ALLOW THE LIMITATION OR EXCLUSION OF LIABILITY FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES, SO THE LIMITATIONS OR EXCLUSIONS IN THIS AND THE FOREGOING PARAGRAPH MAY NOT APPLY TO YOU.

Google's (and its wholly owned subsidiaries') total cumulative liability to You or any other party for any loss or damages resulting from any claims, demands, or actions arising out of or relating to this Agreement shall not exceed U.S. $500.

12. SERVICE LEVELS. Google does not guarantee the Service will be operable at all times or during any down time (1) caused by outages to any public Internet backbones, networks or servers, (2) caused by any failures of Your equipment, systems or local access services, (3) for previously scheduled maintenance or (4) relating to events beyond Google's (or its wholly owned subsidiaries') control such as strikes, riots, insurrection, fires, floods, explosions, war, governmental action, labor conditions, earthquakes, natural disasters, or interruptions in Internet services to an area where Google (or its wholly owned subsidiaries) or Your servers are located or co-located. Complete accuracy in all aspects of Your Statistics at all times also is not guaranteed.

13. PROPRIETARY RIGHTS NOTICE. The Service, which includes but is not limited to the UTM and the Google Analytics Software and all intellectual property rights in the Service are, and shall remain, the property of Google (and its wholly owned subsidiaries). All rights in and to the Processing Software not expressly granted to You in this Agreement are hereby expressly reserved and retained by Google and its licensors without restriction, including, without limitation, Google's (and its wholly owned subsidiaries') right to sole ownership of the Google Analytics Software and Documentation. Without limiting the generality of the foregoing, You agree not to (and to not allow any third party to): (a) sublicense, distribute, or use the Service outside of the scope of the License granted herein; (b) copy, modify, adapt, translate, prepare derivative works from, reverse engineer, disassemble, or decompile the Processing Software or otherwise attempt to discover any source code or trade secrets related to the Service; (c) use the trademarks, trade names, service marks, logos, domain names and other distinctive brand features of any copyright or other proprietary rights associated with the Service for any purpose without the express written consent of Google; (d) register, attempt to register, or assist anyone else to register any trademark, trade name, serve marks, logos, domain names and other distinctive brand features, copyright or other proprietary rights associated with Google (or its wholly owned subsidiaries) other than in the name of Google (or its wholly owned subsidiaries, as the case may be); or (e) remove, obscure, or alter any notice of copyright, trademark, or other proprietary right appearing in or on any item included with the Service.

Google Analytics - Features

14. U.S. GOVERNMENT RIGHTS . If the use of the Service is being acquired by or on behalf of the U.S. Government or by a U.S. Government prime contractor or subcontractor (at any tier), in accordance with 48 C.F.R. 227.7202-4 (for Department of Defense (DOD) acquisitions) and 48 C.F.R. 2.101 and 12.212 (for non-DOD acquisitions), the Government's rights in the Software, including its rights to use, modify, reproduce, release, perform, display or disclose the Software or Documentation, will be subject in all respects to the commercial license rights and restrictions provided in this Agreement.

15. TERM and TERMINATION . Either party to the Agreement may terminate it at any time and for any reason.

Upon any termination or expiration of this Agreement, Google will cease providing the Service, and You will delete all copies of Google Analytics's UTM code from all Pages and certify thereto in writing to Google within three (3) business days of such termination. In the event of any termination (a) You will not be entitled to any refunds of any usage fees or any other fees, and (b) any (i) outstanding balance for Service rendered through the date of termination, and (ii) other unpaid payment obligations during the remainder of the Initial Term will be immediately due and payable in full and (c) all of Your historical report data will no longer be available to You unless a purchase or professional services agreement for the exchange and transfer of such data is entered into as a component of termination.

16. MODIFICATIONS TO TERMS OF SERVICE AND OTHER POLICIES . Google reserves the right to change or modify any of the terms and conditions contained in this Agreement or any policy governing the Service, at any time, by posting the new agreement to the site located at www.google.com/analytics (or such other URL as Google may provide). You are responsible for regularly reviewing the policy. No amendment to or modification of this Agreement will be binding unless (i) in writing and signed by a duly authorized representative of Google, (ii) You accept updated terms online, or (iii) You continue to use the Service after Google has posted updates to the Agreement or to any policy governing the Service.

17. MISCELLANEOUS; APPLICABLE LAW AND VENUE . Google shall be excused from performance hereunder to the extent that performance is prevented, delayed or obstructed by causes beyond its reasonable control. This Agreement (including any amendment agreed upon by the parties in writing) represents the complete agreement between us concerning its subject matter, and supersedes all prior agreements and representations between the parties. If any provision of this Agreement is held to be unenforceable for any reason, such provision shall be reformed to the extent necessary to make it enforceable to the maximum extent permissible so as to affect the intent of the parties, and the remainder of this Agreement shall continue in full force and effect. This Agreement shall be governed by and construed under the laws of the state of California without reference to its conflict of law principles. In the event of any conflicts between foreign law, rules, and regulations, and California law, rules, and regulations, California law, rules and regulations shall prevail and govern. Each party agrees to submit to the exclusive and personal jurisdiction of the courts located in Santa Clara County , California . The United Nations Convention on Contracts for the International Sale of Goods and the Uniform Computer Information Transactions Act shall not apply to this Agreement. The Software is controlled by U.S. Export Regulations, and it may be not be exported to or used by embargoed countries or individuals. Any notices to Google must be sent to: Google Inc., 1600 Amphitheatre Parkway, Mountain View , CA 94043 , USA , with a copy to Legal Department, via first class or air mail or overnight courier, and are deemed given upon receipt. A waiver of any default is not a waiver of any subsequent default. You may not assign or otherwise transfer any of Your rights hereunder without Google's prior written consent, and any such attempt is void. The relationship between Google and You is not one of a legal partnership relationship, but is one of independent contractors. This Agreement shall be binding upon and inure to the benefit of the respective successors and assigns of the parties hereto. The following sections of this Agreement will survive any termination thereof: 1, 4, 5, 6 (except the last two sentences), 7, 8, 9, 10, 11, 13, 15, and 17.

4/8/2008

Google Analytics - Features

©2008 Google - Analytics Home - Terms of Service - Privacy Policy - Contact Us

**EXHIBIT 6**





United States ▶

**About Us**
Company History
Management
Contact Us

**Our Solutions**

Investor Relations

News & Events

Careers

→ SEARCH SITE

# Contact Us

Through ValueClick's global presence, we have experts around the world to help you meet your online marketing needs. Contact one of our offices today!

ValueClick Corporate Headquarters | ValueClick International

Our Solutions:
Ad Serving & Technology | Affiliate & Search Marketing | Comparison Shopping
Display Advertising, Behavioral Targeting, Lead Generation & Video

If you are not sure which solution fits your requirements, let one of our experts assist you:
click here.

## ValueClick Corporate Headquarters

**Los Angeles, CA**
30699 Russell Ranch Road
Suite 250
Westlake Village, CA 91362

**Tel: 818 575 4500**

## ValueClick International

**ValueClick Europe Ltd.**
Oxford House
182 Upper Richmond Road

**ValueClick France**
4 rue du Faubourg Montmartre
75 009 Paris

**ValueClick Germany**
Hauptstrasse 1
82008 Unterhaching/München

TOP

Putney, London SW15 2SH
United Kingdom

**Tel: +44 (0)20 8785 5800**
**Fax: +44 (0)20 8789 6510**

**ValueClick Sweden**
Karlbergsvägen 77
SE-113 35 Stockholm
Sweden

**Tel: +46 (0)8 562 10 350**
**Fax: +46 (0)8 562 10 360**

France

**Tel: +33 (0)1 46 51 40 71**
**Fax: +33 (0)1 46 51 47 71**

Germany

**Tel: +49 (0)89 66 54 79 0**
**Fax: +49 (0)89 66 54 79 10**

TOP

# Ad Serving & Technology - Mediaplex

**San Francisco, CA
(Headquarters)**
Mediaplex
177 Steuart St.
Suite 600
San Francisco, CA 94105

**Tel: 415 808 1900**
**Toll Free: 1 877 402 PLEX
(7539)**

**New York, NY**
Mediaplex
150 East 52nd St.
14th Floor
New York, NY 10022

**Tel: 212 471 9600**

**Louisville, KY**
Mediaplex Systems
5111 Commerce Crossings Dr.
Suite 200
Louisville, KY 40229

**Tel: 502 810 5000**

International offices in the **United Kingdom, France** and **Germany**
- see ValueClick International

TOP

# Affiliate & Search Marketing -
# Commission Junction

**Santa Barbara, CA**

**San Francisco, CA**

**Westborough, MA**

**(Headquarters)**
Commission Junction
530 East Montecito St.
Santa Barbara, CA 93103

**Tel: 800 761 1072**
**International: 805 730 8000**

**New York, NY**
Commission Junction
370 Lexington Ave.
Suite 908
New York, NY 10016

**Tel: 212 471 9600**

Commission Junction
177 Steuart St.
Suite 600
San Francisco, CA 94105

**Tel: 415 293 1800**

Commission Junction
4 Technology Drive
Suite 200A
Westborough, MA 01581

**Tel: 508 480 4000**

International offices in the **United Kingdom, France and Germany**
- see ValueClick International

TOP

## Comparison Shopping - PriceRunner

**Los Angeles, CA**
PriceRunner
30699 Russell Ranch Road Suite
250
Westlake Village, CA 91362
91361

**Tel: 818 575 4500**

International offices in the **United Kingdom, France, Germany and Sweden**
- see ValueClick International

TOP

## Display Advertising, Behavioral Targeting, Lead Generation and Video - ValueClick Media

**Los Angeles, CA (Headquarters)**
ValueClick Media
30699 Russell Ranch Road
Suite 250
Westlake Village, CA 91362

**Tel: 818 575 4500**

**San Francisco, CA**
ValueClick Media
177 Steuart St.
Suite 600
San Francisco, CA 94105

**Tel: 415 293 1800**

**Harrisburg, PA**
Webclients.net
2201 North Front St
Harrisburg, PA 17110

**Tel: 717 346 3600**

**Westwood, CA**
ValueClick Media
10960 Wilshire Blvd.
Suite 940
Los Angeles, CA 90024

**Tel: 424 270 2500**

**New York, NY**
ValueClick Media
150 East 52nd St.
14th Floor
New York, NY 10022

**Tel: 212 471 9570**

**Santa Barbara, CA**
ValueClick Media
360 Olive St.
Santa Barbara, CA 93101

**Tel: 805 879 1600**

**Chicago**
ValueClick Media
30 South Wacker Dr.
Suite 2200
Chicago, IL 60606

**Tel: 312.466.7512**

International offices in the **United Kingdom, France and Germany** - see ValueClick International

TOP

## Contact Us Today

ValueClick and our team of experts are here to assist you in finding the right solutions to meet your needs.
Simply fill in the following information and one of our experienced team members will be in contact with you.

* All fields required.

First Name:

Last Name:

ValueClick, Inc. - About Us: Contact Us

Title:

Company:

E-mail:

Phone:

State/Province: --None--

I am an: --None--

How did you hear about us?: --None--

Interested in? --None--

Questions or Comments:



Submit

Ad Serving & Technology · Affiliate & Search Marketing · Comparison Shopping · Display Advertising, Behavioral Targeting, Lead Generation & Video

| Contact Us | Legal

Copyright © 2008, ValueClick, Inc. All rights reserved.

# **EXHIBIT 7**

Page 1 of 1

4/9/2008

# AdOn|network®
Advertising innovated



| Advertisers | Publishers | About | Contact |

## About AdOn Network

**About AdOn**
**Management**
**Press**
**Partners**
**Innovation**
**Blog**
**Careers**
**Our Geek Roots**
**Privacy Policy**
**Contact Us**

### Contact Us

Address
Ad On Network
4130 E Van Buren St.
Suite 250
Phoenix, AZ 85008

**View Map**

Phone: 866.258.9245
Fax:     602.297.4219

Email

Ad Sales:                          AdSales@AdOnNetwork.com

Advertiser Service:            AdServices@AdOnNetwork.com

Publisher/Client Service:   ClientService@AdOnNetwork.com

Business Development:       BizDev@AdOnNetwork.com

Career Opportunities:        Jobs@AdOnNetwork.com

Company Info | Privacy Statement    Copyright © 2008, AdOn Network ®    a PV Media Group company