```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------x
BAYTREE CAPITAL ASSOCIATES, LLC,
derivatively on behalf of,
BROADCASTER, INC.,                            08 Civ. 1602 (LLS)
                                              Opinion and Order
                    Plaintiffs,
     -against-

NOLAN QUAN, MARTIN R. WADE III, BLAIR
MILLS, RICHARD BERMAN, ANDREW GARRONI,
JASON BRAZELL, ROBERT GOULD, SANGER
ROBINSON, ALCHEMY COMMUNICATIONS, INC.,
FROSTHAM MARKETING, INC., PACIFICON
INTERNATIONAL, INC., LONGVIEW MEDIA,
INC., ACCESS MEDIA NETWORKS, INC.,
ALCHEMY F/X, INC., INNOVATIVE
NETWORKS, INC., BINARY SOURCE, INC.,
BROADCASTER, LLC, TRANSGLOBAL MEDIA,
LLC, SOFTWARE PEOPLE, LLC, and ACCESS
MEDIA TECHNOLOGIES, LLC,

                    Defendants,
     -and-

BROADCASTER, INC.,
                    Nominal Defendant.
-----------------------------------------x
PAUL GOODMAN, individually and in his
capacity as a member of the Board of
Directors as a Director of Broadcaster
Inc., pursuant to BCL 720,                    08 Civ. 2480 (LLS)
                                              Opinion and Order
                    Plaintiffs,
     -against-

BROADCASTER, INC., MARTINE WADE, NOLAN
QUAN and BLAIR MILLS,

                    Defendants.
-----------------------------------------x
```

Defendants move pursuant to 28 U.S.C. § 1404(a) to transfer the above actions to the District Court for the Central District of California.

BACKGROUND

On February 15, 2008, Baytree Capital Associates ("Baytree") filed a shareholder derivative action in this Court against Broadcaster, Inc. ("Broadcaster") and many of its current and former directors and officers, seeking injunctive relief and damages for securities fraud, breach of fiduciary duties, corporate waste, unjust enrichment, conversion of corporate assets, and violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 et seq..

On March 4, 2008, Paul Goodman commenced an action pursuant to New York's Business Corporation Law ("BCL") § 720 in the Supreme Court of the State of New York, stemming from similar allegations of breaches of fiduciary duties by Broadcaster's officers and directors, corporate waste, improper related-company transactions, and the improper issuance of "earn out shares." The case was removed to this Court on March 11, 2008, there being diversity jurisdiction.

Both complaints allege that defendants engaged in undisclosed related party transactions in which they drained millions of dollars of Broadcaster assets for their personal benefits.

Broadcaster was created on June 2, 2006 when International Microcomputer Software, Inc. acquired AccessMedia, a company owned and/or controlled by defendant Nolan Quan. IMSI then changed its name to Broadcaster, Inc.. The merger occurred in California.

In August 2006, the Federal Trade Commission ("FTC") filed a complaint in the United States District Court for the Central District of California against defendants AccessMedia Networks Inc., Alchemy Communications Inc., Pacificon International, Inc., Frostham Marketing Inc., Longview Media Inc., Innovative Networks Inc., Binary Source Inc., and Andrew Garroni, alleging that they used an unfair and deceptive computer scheme to coerce payments from consumers. The FTC proceeding was conducted in California and resulted in a settlement. Defendant Jason Brazell, who executed the FTC settlement agreement on Frostham's behalf, is a citizen of California. Defendant Garroni, who executed the settlement agreement on behalf of defendants Longview and Pacificon, is a citizen of California. Defendants Pacificon, Binary, and Longview are California corporations with their principal places of business in California. Defendant Frostham is a Florida corporation with its principal place of business in California. Defendant AccessMedia is a Delaware

corporation with its principal place of business in California. Defendant Alchemy is incorporated in California and has its principal place of business there.

The complaints in the present actions allege that following the FTC settlement, defendants Martin Wade (New Jersey resident), Blair Mills (California resident), and Richard Berman (Connecticut resident), who were directors of Broadcaster, began a fraudulent scheme, with defendant Quan (Broadcaster's Chief Operating Officer, a California resident), to loot the assets of Broadcaster through payments to other defendant companies for fictitious internet advertising campaigns. They allege that Broadcaster paid Frostham and Longview millions of dollars for advertising and traffic generation, for which Frostham and Longview did not provide any services. According to the complaints, defendants did not disclose that Frostham and Longview were controlled by Quan, Garroni, and Brazell, who personally profited from the transactions.

The complaints allege that Alchemy (a California corporation with its principal place of business in California) utilized software to cause computers to involuntarily visit the broadcaster.com site, registering a "hit" or "unique visitor" on the website server which gave the false impression that a consumer had visited the site.

Those involuntary visits allowed defendants to hide payments supposedly made for traffic generation that never occurred.

The scheme benefited Quan because on January 4, 2007, Broadcaster altered Quan's compensation package, equating each unique visitor with one dollar of earnings, so that when the company reached certain unique visitor levels, Quan was issued millions of additional shares of stock. Plaintiffs allege that those shares were illegitimately earned.

On March 26, 2008, this Court entered a Temporary Restraining Order in the Goodman case, restraining defendants' attempted removal of Mr. Goodman from Broadcaster's Board of Directors.

This Court entered a Temporary Restraining Order in the Baytree case on March 28, 2008, restraining Broadcaster "from spending, transferring, selling, encumbering, pledging, or conveying in any manner the funds, assets, and/or treasury stock of Broadcaster, Inc. except in the ordinary course of Broadcaster's business, and that all such ordinary course payments in excess of $1000 shall be reviewed by outside counsel to Broadcaster."

Thereafter, defendants brought these motions to transfer both actions to the Central District of California.

## DISCUSSION

Section 1404(a) of title 28 of the United States Code provides that, "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The actions could have been brought in the Central District of California because venue would be proper and defendants would be subject to process there.

In determining whether the Goodman and Baytree cases should be transferred to the Central District of California, the relevant factors include:

> (1) the convenience of the witnesses; (2) the location of the relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with governing law; (8) the weight accorded to the plaintiff's choice of forum; and (9) the trial efficiency and the interests of justice based on the circumstances.

WellQuest Int'l, Inc. v. Genesis Intermedia.com, Inc., 2001 U.S. Dist. LEXIS 16757 (S.D.N.Y. Oct. 18, 2001). The court

has broad discretion to balance these factors and to consider the evidence of convenience and fairness on a case-by-case basis. In re Cuyahoga Equip. Corp., 980 F.2d 110, 117 (2d Cir. 1992), citing Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988).

   A.   Convenience Of Witnesses

   The convenience of witnesses is a major factor in evaluating a transfer motion. 800-Flowers, Inc. v. Intercontinental Florist, Inc., 860 F. Supp. 128, 134 (S.D.N.Y. 1994). "When weighing the convenience of the witnesses, courts must consider the materiality, nature, and quality of each witness, not merely the number of witnesses in each district." Royal & Sunalliance v. British Airways, 167 F. Supp. 2d 573, 577 (S.D.N.Y. 2001). To enable the court to make that evaluation, a movant relying on the convenience of witnesses "must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover." Factors Etc., Inc. v. Pro Arts, Inc., 579 F.2d 215, 218 (2d Cir. 1978).

   Defendants have identified twenty-seven witnesses, who will testify as to the FTC proceedings, the alleged related-party transactions, the calculation of visitors to

the Broadcaster website, the services provided by defendant companies to Broadcaster, Broadcaster's financial reporting and disclosures, the number of "unique users" who visited the Broadcaster website, and advertising-related services provided to Broadcaster and payments for those services. Declaration of Eugene Licker ¶ 20.  Eighteen of those witnesses are located in the Central District of California, and of those eighteen, twelve are non-party witnesses.  See Herbert v. Elec. Arts, Inc., 325 F. Supp. 2d 282, 286 (S.D.N.Y. 2004) ("The convenience of non-party witnesses generally carries more weight than the convenience of party witnesses.").

The only witnesses identified by defendants who reside in New York are nominal plaintiff Baytree and its principal, Michael Gardner, and plaintiff Paul Goodman.

Baytree asserts that there are other material witnesses in New York, who would be inconvenienced by a transfer to California.  It argues that Bruce Galloway, the former Chairman of Broadcaster's board of directors, who resides in New York, will testify as to "(1) the actions of various Directors and the company that caused him to resign his position; (2) the expenses and revenue of the defendants; and (3) the services provided by third parties and the Defendants." Declaration of Peter Sullivan ¶ 4.

-8-

However, neither the Goodman nor the Baytree complaint mentions Mr. Galloway, and his testimony seems to be of only secondary importance.

Baytree argues that Broadcaster identifies witnesses as non-New Yorkers, even though their companies (Google Analytics, ValueClick Media, and Ad On Network) have New York offices. However, the relevant witnesses from those companies are not located in New York. Google Analytics is located in California, ValueClick's relevant representatives are in California, and Ad On Network's relevant representative is located in Phoenix, Arizona. Baytree also argues that defendants have "piled on" redundant witnesses to testify about the FTC proceedings. While those five listed witnesses may end up being duplicative, the FTC action forms a substantive basis to both complaints, and testimony about it will be material. The potential deduction of some of those witnesses would not tilt the convenience factor in favor of keeping the actions in New York.

Plaintiffs argue that Michael Gardner's health prevents him from traveling to California. However, Mr. Gardner's physician states that he will be able to travel in two months, see Declaration of Michael Gardner, Ex. 1, and Mr. Gardner's testimony can be obtained by deposition.

Therefore, because the majority of the material witnesses are located in California, the convenience of witnesses weighs in favor of transferring the cases to the Central District of California.

B. <u>Location of Documents</u>

The majority of the relevant documents from Broadcaster and the allegedly related companies are physically located in California. All of the data and documents relating to the FTC action are in California. While electronic documents may be obtainable in New York, Broadcaster's servers and web hosts are located in California, and the retrieval of such data must be done in California.

C. <u>The Convenience of the Parties and their Relative Means</u>

Eighteen of the twenty-one defendants in <u>Baytree</u> are California citizens or businesses, as are three of the four defendants in <u>Goodman</u>. The remaining defendants are not New York citizens or businesses.

Mr. Goodman states that "a transfer would probably result in my having to voluntarily dismiss the two actions in which I am Plaintiff." Declaration of Paul Goodman ¶5.

Mr. Goodman, an attorney who represents himself in the Goodman action, argues that he will be prejudiced if the litigation continues in California because of the cost to him. However, he does not attest to the specific financial burdens he would suffer as a result of a transfer, nor does he explain his ability to travel for the depositions of the numerous witnesses in California if the case proceeds in New York.

Baytree's convenience is not at issue because as a nominal plaintiff in a derivative action, it is not a real party in interest. It sues on behalf of the corporation, Broadcaster, which is incorporated in Delaware and has its principal place of business in Los Angeles.

### D. Locus of Operative Facts

The location of the "operative events is a 'primary factor' in a transfer motion." WellQuest, 2001 U.S. Dist. LEXIS 16757, at *11.

The locus of operative facts of the Baytree and Goodman actions is in California. The FTC proceeding was filed and litigated in California. The alleged fraudulent scheme of unjustified payments for fictitious advertising campaigns and traffic generation took place in California

-11-

between California companies. The entity that monitored the traffic, Google Analytics, is based in California.

All of the activities at the heart of plaintiffs' claims occurred in California, and the complaints do not allege that the underlying events took place in New York.

Baytree and Goodman make the extravagant argument that Broadcaster's Audit Committee's selection of Daly & Pavlis, LLC, of Southport, Connecticut to investigate the alleged related party transactions is an "admission" that New York is the proper venue for these cases. The more significant fact is that Daly & Pavlis had to travel to Broadcaster's offices in California to speak with personnel and review the company's records. The Audit Committee (which includes Mr. Goodman, who argues for New York venue) merely selected that firm as competent investigators.

Baytree also argues that Broadcaster's public relations and marketing work was done by The Investor Relations Group, Inc. and Rubenstein Associates in New York. The complaints do not allege any impropriety concerning either of those firms, or wrongdoing in connection with Broadcaster's public relations or marketing, so that activity in New York is of lesser materiality.

Plaintiffs also argue that Broadcaster's Form 10-K filing for the fiscal year ending June 30, 2007 stated: "Baytree also provides a New York office for us which is used on a regular basis by our Chief Executive Officer, Mr. Martin R. Wade, III." Declaration of Peter Sullivan, Ex. A, p. 49. However, Mr. Wade states:

> On trips to New York, I was offered and used, as a convenience, an office at Baytree (in lower Manhattan), which was vacant at the time. At no time have the operations of Broadcaster been conducted from that office, nor was it a "Broadcaster office." Neither my name nor the Company's name appeared on the office door, nor was any rent, telephone or other such charges paid or assessed. The day-to-day operations of Broadcaster were conducted, and continue to be conducted, entirely from the Company's offices in California.

Declaration of Martin Wade ¶ 9. Plaintiffs do not point to any specific transactions underlying the complaints that occurred in New York.

The facts underlying these actions occurred in the Central District of California and this factor favors transferring the cases.

E.  Forum's Familiarity with Governing Law

Baytree concedes that "It is anticipated that United States Courts in both New York and California will be familiar with governing law." Baytree's Memorandum p. 22.

-13-

However, Goodman argues that his case is "quite specifically a New York suit", <u>see</u> Goodman's Memorandum p. 2, because he sues under N.Y. BCL § 720, which allows directors and officers to sue to hold other directors and officers liable for the "loss or waste of corporate assets due to any neglect of, or failure to perform, or other violation of his duties." That argument is ineffective for three reasons. First, in a transferred case the receiving court applies the law of the transferring forum. <u>Van Dusen v. Barrack</u>, 376 U.S. 612, 639 (1964). Second, the District Court for the Central District of California has heard an action under N.Y. BCL § 720, and thus has any necessary familiarity with that statute. <u>See</u> <u>Morton v. Rank Am., Inc.</u>, 812 F. Supp. 1062 (C.D. Cal. 1993). Third, "It is well established that as a matter of law, corporate governance issues are normally controlled by the law of the state of incorporation." <u>Langner v. Brown</u>, 913 F. Supp. 260, 270 (S.D.N.Y. 1996). Because Broadcaster is a Delaware corporation, Delaware law applies to Goodman's claims.

Thus this factor does not weigh decidedly in favor of keeping the case in New York.

F.  Weight Accorded to Plaintiff's Choice of Forum

"Plaintiff's choice of forum is generally given 'substantial consideration.'  In re Warrick, 70 F.3d 736, 741 (2d Cir. 1995).  However, this consideration is lessened where, as here, the operative facts occurred largely outside the forum where the case was filed."  WellQuest, 2001 U.S. Dist. LEXIS 16757, at *17.

In derivative actions, "the weight given plaintiff's choice of forum is 'considerably weakened' because the plaintiff is only one of many potential plaintiffs, 'all of whom could with equal show of right go into their many home courts.'"  See Strauss v. West Highland Capital, 2000 U.S. Dist. LEXIS 14937, at *5 (S.D.N.Y. Oct. 5, 2000).

Here, plaintiffs' choice of forum, as a factor, is weak.

G.  Trial Efficiency and the Interests of Justice

"Transfer is appropriate in order to facilitate discovery when: (i) the action is in the early stages of litigation; and (ii) the transferee district is the place where the operative events occurred and where many of the witnesses and documents are located."  WellQuest, 2001 U.S. Dist. LEXIS 16757, at **17-18.

The Goodman and Baytree actions are in the early stages of litigation, and as discussed above, the transferee district is the place where the operative events occurred and where many of the witnesses and documents are located. The majority of the defendants are from California with limited ties to New York, raising the question of whether they are subject to this Court's personal jurisdiction.

Therefore, for trial efficiency and the interests of justice, the Baytree and Goodman actions should be transferred to the Central District of California.

## CONCLUSION

Defendants' motions to transfer pursuant to 28 U.S.C. § 1404(a) are granted.

The Clerk of the Court is directed to transfer these cases to the United States District Court for the Central District of California.

So ordered.

DATED:   New York, New York
         April 18, 2008

*Louis L. Stanton*
LOUIS L. STANTON
U.S.D.J.